**D.C. TRANSIT SYSTEM, INC.,**
**Appellant,**

v.

**UNITED STATES of America.**

**No. 82–1330.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 18, 1983.

Decided Sept. 20, 1983.

As Amended Jan. 16, 1984.

Stanley J. Fineman, Washington, D.C., with whom C. Francis Murphy and Louis P. Robbins, Washington, D.C., were on the brief, for appellant.

Nathan Dodell, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., and M. Kevin Voyles, Dept. of Interior, Washington, D.C., were on the brief, for appellee.

Before WILKEY and BORK, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

McGOWAN, Senior Circuit Judge:

This appeal is from the District Court's grant of summary judgment against plaintiff D.C. Transit System on statute-of-limitations grounds. Plaintiff brought this action against the United States to quiet title to certain real property within the District of Columbia under 28 U.S.C. § 2409a (1976). The question presented on appeal is whether D.C. Transit should have known of the government's interest in the property before May 19, 1968, so as to bar the transit company's action under the twelve-year statute of limitations provided for in section 2409a(f).

The District Court on undisputed facts found that plaintiff had constructive notice of the government's claim before that date, and accordingly entered summary judgment for the defendant United States government. Because we find that D.C. Transit had no reason to suspect or even to inquire as to the government's adverse interest in the property before that date, we reverse the District Court judgment and remand the case for further proceedings.

## I

The property in question originally formed part of the Glover-Archbold Parkway, formerly known as Arizona Avenue, in the Georgetown area of the District of Columbia. On December 17, 1968, the District of Columbia passed a municipal resolution closing the parkway, and the corresponding changes in the realty records were recorded in the Surveyor's Office on January 13, 1969.

As owner of two abutting lots on either side of the former street, D.C. Transit claims title to the property under the Street Readjustment Act of the District of Columbia, D.C.CODE ANN. §§ 7–401 to 7–410 (1973) (current version at *id.* (1981)). Section 7–401 of the Act provides:

> The District of Columbia Council is authorized to close any street, road, highway, or alley ... in the District of Columbia ..., the title to the land embraced within the public space so closed to revert to the owners of the abutting property ....

*Id.* § 7–401.

The United States claims title to the same property based on language on the closing plat recorded on January 13, 1969, which provides that title to the closed parkway land "shall revert to the United States of America (National Park Service)." This notation effectuated the District government's earlier promise to transfer the abandoned right-of-way to the National Park Service under an agreement executed between the two parties on May 25, 1966. It is the United States' position that the District of Columbia government had power to effect this transfer under section 8–108 of the Parks and Playgrounds provisions of the D.C.Code. *See* D.C.CODE ANN. § 8–108 (1973) (current version at *id.* § 8–104 (1981)).

After allegedly learning of the government's claim to the property for the first time in March 1978, D.C. Transit brought this action to quiet title under 28 U.S.C. § 2409a (1976) on May 19, 1980. Section 2409a per-

mits suits against the United States to adjudicate disputed title to real property in which the federal government claims an interest.

Following discovery, the United States moved for summary judgment on the ground that plaintiff's suit was barred by the statute of limitations contained in section 2409a(f). That provision reads:

> Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

*Id.* § 2409a(f). Although the government presented no evidence disputing D.C. Transit's lack of actual knowledge before March 1978, it did argue that the transit company should have known of the government's claim by at least January 1967, over thirteen years before suit was filed. The government based its conclusion on two official notices that D.C. Transit received in November 1966 and January 1967, respectively, concerning the proposed street closing.

Relying on these two notices, the District Court found that D.C. Transit should have discovered the United States' adverse interest in the property sometime during 1967. The court accordingly granted the government's motion for summary judgment. *D.C. Transit System, Inc. v. United States,* 531 F.Supp. 808, 814 (D.D.C.1982).[1]

The first notice to which the District Court referred was mailed to all owners of abutting property during November 1966 announcing that a public hearing would be held the following month to consider objections to the proposed parkway closing. The mailing stated:

> Notice is hereby given that under authority granted in the [Street Readjust-

ment Act], the Commissioners of the District of Columbia will hold a public hearing ... to determine the question as to any property rights which may be affected or as to the equity, justice or advisability of the [proposed parkway closing].
>
> As owner of property abutting on the area proposed to be closed, you are hereby advised of your privilege to be present at said hearing ... for the purpose of stating objections, if any, to the closing adjacent to your land.

Letter from Commissioners of the District of Columbia to D.C. Transit System, Inc. (Nov. 1966). A similar notice was also published in city newspapers for fourteen days before the hearing in compliance with the public notice and hearing requirements of the Street Readjustment Act. *See* D.C. CODE ANN. § 7–402 (1967) (current version at *id.* (1981)).

At the public hearing held on December 8, 1966, the District Commissioners not only reviewed the proposed closing but also revealed their intention to transfer the abandoned right-of-way to the National Park Service. Maps displayed at the hearing noted that title to the closed parkway land would revert to the United States.

The following month the District government sent a second notice to D.C. Transit setting forth a proposed street-closing order. The proposed order made no mention of the contemplated transfer to the National Park Service, but instead specifically provided that the closing action would be taken under the Street Readjustment Act and that "title to the land comprised in said areas so closed [is] to revert to and/or vest in the abutting property owners as shown on said maps." Letter from the Commissioners of the District of Columbia to D.C. Transit System, Inc. (Jan. 3, 1967). The letter asked any party opposing the pro-

---

1. Because the statute of limitations in section 2409a(f) is jurisdictional, *see Grosz v. Andrus,* 556 F.2d 972, 975 (9th Cir.1977), it would be more proper to characterize the District Court's ruling as a rule 12(b)(1) dismissal for lack of subject matter jurisdiction than as a summary judgment pursuant to rule 56, *see* FED.R.CIV.P. 12(b)(1), 56. Under rule 41(b), a

dismissal for lack of jurisdiction does not operate as an adjudication on the merits and therefore is not a proper issue for summary judgment. *See* FED.R.CIV.P. 41(b). Moreover, rule 12(h)(3) requires a court to dismiss an action whenever it appears that the court lacks subject matter jurisdiction. *See* FED.R.CIV.P. 12(h)(3).

posed order to file written objection with the Commissioners within thirty days, as required by section 7–404 of the D.C.Code. *See* D.C.CODE ANN. § 7–404 (1967) (current version at *id.* (1981)).

On February 9, 1967, the Secretary of the Board of Commissioners signed a new draft of the order which took into account objections raised by two parties and which also transferred the right-of-way to the National Park Service upon the roadway's closing. A copy of this new order was not mailed to abutting owners for comment, however, but instead was adopted by the D.C. City Council on December 17, 1968. The closing plat reflecting the City Council's action was recorded in the Surveyor's Office on January 13, 1969. Neither the City Council's final resolution nor the ultimate plat recording are relevant for purposes of this appeal, however, since both occurred after May 18, 1968, or less than twelve years before D.C. Transit filed its suit.

## II

Constructive notice of real property interests generally arises from deeds and other instruments properly recorded in the realty records of the controlling jurisdiction. In this case, the United States urges that such notice arose prior to formal recordation. The government bases its conclusion on the two official notices which, it asserts, placed D.C. Transit under a duty of inquiry and which would have led the transit company to discover the government's claim had it attended the hearings or examined the maps referred to in the notices.

■ The statute-of-limitations language in section 2409a(f) sets out a test of reasonableness governing constructive notice of government real property interests in quiet title actions against the United States. *See Amoco Production Co. v. United States,* 619 F.2d 1383, 1388 (10th Cir.1980). The section's reach therefore may be broader than that of local recording statutes in certain instances. For example, where a party should have reasonably discovered an adverse property interest asserted by the United States, he will be charged with con-

structive notice of the government claim even though a local statute does not impute such knowledge to him.

■ After reviewing the government's arguments and the opinion of the District Court, however, we do not find that the present case falls within this latter category. On the contrary, based on the two notices received by D.C. Transit in 1966 and 1967, a reasonable person would have concluded that the District government intended to transfer the abandoned parkway land to abutting property owners in accordance with the explicit provisions of the Street Readjustment Act. Nothing in the notices suggests the possibility of a contemplated transfer to the National Park Service. D.C. Transit therefore cannot reasonably be charged with constructive knowledge of the government's adverse claim on the basis of the two notices cited by the United States.

### A. *The First Notice*

The first notice merely announced a public hearing for the purpose of considering objections to the proposed street closing. The announcement stated that the hearing was being called pursuant to the public notice and comment requirements of the Street Readjustment Act. That Act does not provide for converting public land to park use or for transferring title from one jurisdiction to another; it does provide for closing public streets and for vesting title to abandoned rights-of-way in neighboring landowners.

Although announcement of a public hearing may impart constructive notice of matters discussed at the hearing in certain circumstances, this is true only when the announcement itself clearly sets forth the subjects to be discussed and the public officials' purpose for calling the hearing in the first instance. *See Daley v. Judge of District Court of Western Hampden,* 304 Mass. 86, 23 N.E.2d 1 (1939) (announcement of hearing to consider temporary suspension of police chief did not impart constructive notice of removal proceedings actually conducted at the hearing). Because the District Com-

missioners' notice failed to disclose their intent to convert the abandoned roadway to park use or to transfer title to the National Park Service, constructive notice of these matters cannot fairly be imputed to D.C. Transit, even though the proposed conversion and title transfer were later actually raised and debated at the hearing.

The case law cited by the District Court in its opinion is not to the contrary. For example, in *United States Trust Co. v. David,* 36 App.D.C. 549 (1911), this Court charged a bank with constructive notice of the contents of a bankruptcy petition referred to in receivership-appointment papers delivered to the bank. We based our holding, however, on the bank's negligent failure to investigate circumstances surrounding the bankruptcy that had already aroused the bank's suspicions and caused it to delay processing the receiver's demand for the bankrupt's deposits. *Id.* at 556–58. The present case presents no parallel, because there were no suspicious circumstances known to D.C. Transit at the time that might have placed the company under a similar duty of inquiry.[2]

Equally inapposite are *Booth Fisheries Corp. v. Coe,* 114 F.2d 462 (D.C. Cir.), *cert. denied,* 311 U.S. 691, 61 S.Ct. 72, 85 L.Ed. 447 (1940), and *Washington Association for Children & Television v. FCC,* 665 F.2d 1264 (D.C. Cir.1981). In *Booth Fisheries,* this Court merely charged a patent-holder with constructive knowledge of the content of

his own patent. *See* 114 F.2d at 463 & n. 3 (citing *Ives v. Sargent,* 119 U.S. 652, 7 S.Ct. 436, 30 L.Ed. 544 (1887), which stands for the same proposition). In *Washington Association for Children & Television,* we held a petitioner before the FCC to constructive knowledge of public notices issued by the agency. *See* 665 F.2d at 1270–71. Whatever the significance of that decision for FCC notification procedures, it stands for the unobjectionable principle that an interested party is chargeable with constructive knowledge of properly issued public notices impinging on its interests. In the present case, D.C. Transit not only had constructive knowledge of the public notices issued with respect to its property—it had actual knowledge of them as well. The issues are what information those notices conveyed and whether they placed the company under a further duty of inquiry. The *Washington Association* decision had no opportunity to consider these questions because the public notices in question there clearly stated the information they sought to convey and left no need for the petitioner to inquire further as to their meaning.[3]

### B. *The Second Notice*

The second notice set forth a proposed street-closing order for the parkway and asked interested parties to file any objections within thirty days. This notice was, if anything, more misleading than the first, for besides stating that the closing would be

[2] We assume that D.C. Transit at this point favored the proposed street closing because of the false impression created by the first notice that title would revert to abutting property owners under the Street Readjustment Act. The company therefore had no reason to attend the hearing to voice objections to the Board of Commissioners' proposal. Although self-interest might have led the company to attend the hearing anyway (either to ensure that the proposal passed or to see that boundaries were correctly drawn), there is no basis for imposing a legally enforceable duty of inquiry in this case, absent suspicious circumstances calling attention to the need for further investigation.

[3] The various other decisions cited by the District Court likewise bear no analogy to the present case. In *Livingston v. Maryland Ins. Co.,* 11 U.S. (7 Cranch) 506, 509, 538, 3 L.Ed.

421 (1813), the United States Supreme Court held an insurer to constructive notice of the contents of an insurance application previously considered and rejected by the company and later referred to in a second, successful application. In *Wood v. Carpenter,* 101 U.S. 135, 139–40, 25 L.Ed. 807 (1879), the Supreme Court charged a creditor and judgment-holder with constructive knowledge of various judgments and realty conveyances affecting its debtor's properties, which had been formally recorded in the applicable public records long before suit was filed. Finally, in *Rosenthal v. J. Leo Kolb, Inc.,* 97 A.2d 925, 926–27 (D.C.1953), the Municipal Court of Appeals for the District of Columbia held a purchaser of real property to constructive notice of a lease agreement in force at the time of purchase and expressly binding on the assigns of the previous owner.

effected under the Street Readjustment Act, the order specifically provided that "title to the land comprised in said areas so closed [is] to revert to and/or vest in the abutting property owners as shown on said maps." The problem is that the referenced maps (which were not mailed out with the notice) showed title reverting to the National Park Service, not to neighboring landowners, in direct contradiction to the order's language.

■ Documents incorporated by reference into a public notice may impart constructive knowledge of their contents in many circumstances, but they may not be used to correct fundamental errors in the notice itself unless the notice expressly so warns. *Fry v. City of Salem,* 84 Or. 184, 164 P. 715 (1917). Had the Commissioners' proposed order stated that title to the closed roadway land would revert to abutting property owners *except* as shown on said maps, then constructive notice of the National Park Service's property interest might properly be imputed to D.C. Transit. As matters stand, however, the map reference in the proposed order appears merely to show how title was to revert to neighboring landowners, not whether it would or not.

The case for constructive notice becomes even weaker when one considers the proviso in section 7–401 of the Street Readjustment Act. The general rule of the section is that title to an abandoned roadway automatically reverts to abutting property owners upon street closing. D.C.Code Ann. § 7–401 (1967) (current version at *id.* (1981)). The proviso sets out an exception to this rule for cases in which the United States rather than the District of Columbia holds title to the roadway land prior to closing. In such cases, title does not revert upon closing to abutting owners but instead passes to the District of Columbia government to dispose of the property as it deems fit. *Id.* See generally *Carr v. District of Columbia,* 371 F.Supp. 293, 297 (D.D.C.1974), *modified on other grounds,* 543 F.2d 917 (D.C.Cir.1976).

The parties are agreed that the underlying roadbed belonged to the District of Columbia in 1966 when it agreed to transfer the land to the National Park Service. Under the terms of section 7–401, this promised transfer had to occur prior to the parkway closing in order for title to pass to the Park Service; otherwise, title automatically reverted upon closing to abutting property owners.[4] Once title was transferred to the Park Service, however, it could not revert to abutting property owners even though the District government subsequently closed the street.[5]

Against this background, the statement in the proposed order that title would revert to abutting owners upon closing is incongruous. It suggests not only that title would pass to D.C. Transit in the normal course of events, but also that the United States had no claim to the land at that time. Thus, besides providing no notice of the government's interest, the proposed order appears to foreclose even the hypothetical possibility that such an interest might exist. Under these circumstances, this Court is most hesitant to ascribe constructive notice of the United States' property

---

**4.** We emphasize that our discussion addresses the issue of constructive notice only and is not meant to determine the merits of the underlying property dispute at issue in this case. In this light, our discussion serves the limited purpose of demonstrating how title had to have passed to the National Park Service if the parkway was in fact closed under the exclusive authority of the Street Readjustment Act, as the second notice suggested. We, of course, express no opinion as to whether the District of Columbia government might have achieved the results it sought under other statutory authority, such as the Parks and Playgrounds provi-

sions of the D.C.Code. *See, e.g.,* D.C.Code Ann. § 8–108 (1967) (current version at *id.* § 8–104 (1981)).

**5.** Once the street was closed, abutting owners might acquire title to the underlying land by buying it from the District of Columbia government. (Recall that, upon closing, roadbed land owned by the United States passes to the District.) But there would be no automatic reversion of title to them. *Carr v. District of Columbia,* 371 F.Supp. at 297.

interest to D.C. Transit on the basis of the second notice mailed to it in January 1967.[6]

### III

For the reasons outlined above, we reverse the District Court's judgment and remand the case for further proceedings in consonance with this opinion.[7]

*It is so ordered.*

---

**6.** As an alternative ground for upholding the District Court's ruling in its favor, the government argues that D.C. Transit had constructive notice of its interest based on "legislative acts" of the Board of Commissioners. *See* Brief for Appellee at 25–26. The legislative act referred to was the signing by the Board's Secretary of the new draft order on February 9, 1967. D.C. Transit raises doubts about the propriety of the Secretary's actions under District law. *See* Reply Brief for Appellant at 4–5. In addition, there is a question whether, following substantial alterations in the proposed street-closing order, the order had to be resubmitted to abutting property owners for their comments under section 7–404. *See* D.C.CODE ANN. § 7–404 (1967) (current version at *id.* (1981)). We need not reach these questions, however, because it is apparent from the District government's subsequent actions that it did not consider the February 1967 draft a final legislative act. The Secretary's actions therefore cannot impart constructive notice to D.C. Transit as to the contents of the new draft order.

**7.** We again stress that our opinion is limited to the issue of constructive notice. The government therefore remains free on remand to renew its motion for dismissal on grounds that D.C. Transit had actual notice of the Park Service's claim prior to May 18, 1968. In thus limiting the scope of our remand, we implicitly hold that D.C. Transit's cross-motion for partial summary judgment on the actual notice issue should be denied at this juncture.