**STATE OF CALIFORNIA, ex rel., STATE LAND COMMISSION, Plaintiff-Appellant,**

**v.**

**YUBA GOLDFIELDS, INC., et al., Defendants-Appellees.**

No. 83–2401.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 1984.

Decided Jan. 21, 1985.

Richard M. Frank, Sacramento, Cal., for plaintiff-appellant.

John A. Bryson, Dept. of Justice, Washington, D.C., for defendants-appellees.

Before NORRIS and SCHROEDER, Circuit Judges, and MARSHALL *, District Judge.

CONSUELO BLAND MARSHALL, District Judge:

Appellant, the State of California, appeals from an order of the district court granting summary judgment in favor of the United States. California brought this action in district court in 1979 to quiet title to a portion of the Yuba River. The United States brought a motion for summary judgment, which the district court initially denied. Subsequent to the United States Supreme Court's decision in *Block v. North Dakota ex rel. Board of University and School Lands*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), the district court *sua sponte* reconsidered its order and ruled that the State of California's action was barred by the twelve-year statute of limitations under the Quiet Title Act, 28 U.S.C. § 2409a(f). California contends that the district court incorrectly invoked the accrual provisions of the Quiet Title Act. We find no merit in the appellant's challenge and affirm the district court's ruling.

Jurisdiction rests on 28 U.S.C. § 1291.

I

The land at issue is a portion of the bed of the Yuba River located in Yuba County, California. Situated in Northern California, the Yuba River is a tributary of the Sacramento and Feather Rivers. During the latter half of the nineteenth century, the Sacramento Valley region was the site of extensive gold mining efforts. In particular, the Yuba River and its surrounding area was severely impacted by the employment of hydraulic mining techniques. Water was sprayed under tremendous pressure along the hillsides above the rivers to dislodge gold-bearing material. As a consequence of hydraulic mining, debris was deposited into the flow of the Yuba River. In time, this had disastrous ramifications

for the surrounding environs. Debris inundated the channel of the Yuba River and caused the flooding of the adjacent land. Consequently, the farm utility of the flood stricken property was substantially diminished. In 1893, in response to this catastrophe and with some prodding from the California legislature, Congress enacted the Caminetti Act of 1893, 33 U.S.C. § 661 *et seq.* This legislation established the California Debris Commission, a federal agency staffed by members of the Army Corps of Engineers, which was empowered to regulate and oversee hydraulic mining in the Sacramento and Joaquin river systems within the State of California, 33 U.S.C. § 663. The Caminetti Act had a twofold purpose: (1) to permit hydraulic mining under conditions that would preserve and protect the navigable waters; and (2) to plan works to control the debris and restore the rivers as navigable waterways, 33 U.S.C. §§ 664, 665, 685. In contemplation of federal-state cooperation, the Act authorized the Debris Commission to consult with a state commission of engineers. Specific provisions were included which enabled the Debris Commission to enter into agreements whereby the state would bear one-half of the construction costs for restraining works, 33 U.S.C. § 664, 686. In 1893 and 1897, California passed complementary legislation creating the post of Debris Commissioner. It was the Commissioner's duty to work closely with federal authorities. The legislation expressly authorized him to make payments of California's share of the project, 1893 Cal.Stat., ch. 227; 1897 Cal.Stat., ch. 113.

In 1900, the Debris Commission submitted the "Vischner Report" to Congress recommending the construction of restraining barriers and a settling basin on the Yuba River to forestall the flow of debris downstream. The project required the acquisition of property within the twelve-mile construction area. Although California contributed one-half of the acquisition costs

---

* The Honorable Consuelo B. Marshall, United States District Judge for the Central District of California, sitting by designation.

the subject property was acquired in the name of the United States as the sole grantee. The deeds covering this property were duly recorded with the Yuba County Recorder between 1901 and 1906.

In September of 1970, the Army Corp of Engineers corresponded with the California State Lands Commission inquiring whether California intended to claim title to the properties acquired in connection with the flood control project. In its reply the Commission claimed the property as sovereign land of the State of California. In October 1978, the Corps informed the Deputy Attorney General of California that the United States was the sole fee owner of the riverbed and the adjoining uplands.

On October 19, 1978 California filed suit to quiet title to the twelve-mile stretch of the Yuba River, pursuant to 28 U.S.C. § 2409a, naming several federal and private defendants. Shortly thereafter, the United States moved for summary judgment on the grounds that the action was time-barred by the applicable twelve-year statute of limitations, *see* 28 U.S.C. § 2409a(f). The district court denied the United States' motion and struck its statute of limitations defense.

It was not until the quiet title action had proceeded to trial that the Supreme Court rendered its opinion in *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), holding that states are not entitled to an exemption from the twelve-year statute of limitations in section 2409a(f). The district court then reconsidered its previous ruling on the statute of limitations issue. After hearing argument on a renewed motion for summary judgment, the court rendered judgment in favor of the United States on the grounds that section 2409a(f) barred the State of California's action. The district court dismissed the case against the United States and certified the statute of limitations issue for

appeal. California timely appealed the district court's ruling.

## II

## THE QUIET TITLE ACT'S STATUTE OF LIMITATIONS

The Quiet Title Act, 28 U.S.C. 2409a *et seq.*, limits the period in which parties may file quiet title actions against the United States to a period of twelve years. Section 2409a(f) provides:

> Any civil action under [the Quiet Title Act] shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff *knew or should have known* of the claim of the United States.

28 U.S.C. § 2409a(f) (emphasis added).

The Quiet Title Act's statute of limitations is strictly construed, *Block, supra*, at 461 U.S. 273, 103 S.Ct. 1811 (1983). This court has strictly followed the *Block* mandate that the twelve-year statute of limitations applies to quiet title suits, such as this, brought by a state against the federal government, *Nevada v. United States*, 731 F.2d 633 (9th Cir.1984).

The central issue on appeal is whether the district court erred in finding that California's cause of action accrued in the early 1900's.[1] The district court granted the United State's motion for summary judgment, finding that:

> [B]ased upon its participation in the California Debris Commission, the State of California had actual knowledge in the early 1900's of the (1) acquisition of the subject property in the name of the United States, (2) taking of title to said subject property in the name of the United States, and (3) ultimate claim of the United States to the subject property. Accordingly, the court finds that the State of California 'knew or should have

---

1. Appellate review of a district court's grant of summary judgment is *de novo, M/V American Queen v. San Diego Marine Const.*, 708 F.2d 1483, 1487 (9th Cir.1983). For a movant to be successful in a summary judgment it must be demonstrated that there exists no genuine issue of material fact and that movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

known' of the claim of the United States to the subject property in the early 1900's, within the meaning of § 2409a(f), and that the State of California's cause of action against the United States to quiet title to the subject property accrued in the early 1900's.

*California ex rel. State Lands Commission v. United States,* No. 79–733 (E.D.Cal. July 20, 1983) [order granting summary judgment]. We concur with the reasoning of the district court and affirm its ruling.

California asserts that the district court applied an incorrect legal standard. Appellant contends that under the Quiet Title Act a cause of action accrues when a state becomes reasonably aware of the United State's claim; that the claim must be truly adverse to the state's claim; and that the United States must communicate its claim to the state in a clear and unambiguous manner. The State of California also asserts that its quiet title action did not accrue until 1978, upon its receipt of an Army Corp of Engineers letter expressing the United States' claim to the subject property. We reject these contentions.

Appellant correctly notes that the words "should have known" in section 2409a(f) impart a test of reasonableness, *see Amoco Production Co. v. United States,* 619 F.2d 1383 (10th Cir.1980). Constructive notice of recorded deeds may commence the running of the limitations period, *see Poverty Flats Land and Cattle Co. v. United States,* 706 F.2d 1078, 1079 (10th Cir.1983); *Amoco, supra,* at 1387–88, n. 3 (10th Cir. 1983).

■ In the case at bar, the court need not mull over the issue of whether California "should have known" of the United States' claim, for California had *actual knowledge* of that claim. Although the federal government and California jointly planned and negotiated the acquisition of the property, the deeds to the property were executed and recorded exclusively in the name of the United States. California concedes in its brief that it was aware of this crucial fact. The State of California admits that officials of the California Debris Commission and the State of California worked to acquire lands in the name of the United States. The Debris Commissioner approved all land acquisitions and was fully aware that the deed to this land was recorded in the name of the United States alone.

It is apparent that California was also aware that the United States' claim to the land was independent of any claim California may have had. In 1912, the California State Engineer noted in his biennial report that the Debris Commission had been authorized to sell the site occupied by the settling basin and that the United States had retained the proceeds of the sale. Hence, by selling the land and retaining the proceeds, the United States exercised dominion over the property. An examination of all of the evidence presented conclusively demonstrates that California had notice of the federal government's interest in the property. This notice was sufficient to start the running of the statute of limitations. *See, e.g., Guam v. United States,* 744 F.2d 699 at 700 (9th Cir.1984);[2] *Nevada v. United States,* 731 F.2d 633, 635 (9th Cir.1984); *Park County v. United States,* 626 F.2d 718, 720–21 (9th Cir.1980). There is no evidence to support California's claim that it did not become aware of the United States' adverse claim until 1978.

■ The court must strictly construe the Quiet Title Act's statute of limitations. *Block,* 103 S.Ct. at 1820; *Nevada,* at 634. Consequently, we rely on the precise wording of the Act's text to determine when a

---

**2.** At the time of the oral argument in this case, *Guam* was under submission to another panel of this court. That panel presently issued its opinion.

As in this case, the issue in *Guam* was when the limitations period commenced. The court there noted that the crucial issue in determining when the limitations period commences is whether the plaintiff had notice of the United States' claim.

*Guam* supports the argument advanced by the United States here that the purchase and recording of quitclaim deeds in the United States' name is sufficient to confer notice for the purposes of section 2409a(f).

cause of action accrues. *See also Grosz v. Andrus*, 556 F.2d 972, 975 (9th Cir.1977).

 Neither the language of the statute nor the legislative history of the Act requires a showing of adversity. The statute itself does not require that the United States communicate its claim in clear and unambiguous terms; however, several cases suggest that section 2409a(f) is not triggered when the United States' claim is ambiguous or vague, *see, e.g., Poverty Flats Land & Cattle Co. v. United States*, 706 F.2d 1078 (10th Cir.1983); *Peterson v. Morton*, 465 F.Supp. 986 (C.D.Nev.1979), *vacated on other grounds*, 666 F.2d 361 (9th Cir.1980). In the instant case, the United States' clear interest is evidenced by the existence of quitclaim deeds. It is sufficient that the deeds constituted a cloud on California's title, *see Hatter v. United States*, 402 F.Supp. 1192, 1195 (E.D.Cal.1975).

 The Court is not persuaded by California's contention that the deeds cannot constitute notice of the federal claim because the property was acquired through the joint efforts of the United States and California. The mere fact that the project was undertaken with California's cooperation does not lead to the conclusion that California was unaware of the federal interest in the property. This court addressed a similar issue in *Humboldt County v. United States*, 684 F.2d 1276 (9th Cir.1982). In *Humboldt* the county entered into a "cooperative agreement" whereby the county agreed to bear eighty percent of the cost of constructing a road across public lands. The United States Bureau of Land Management paid the remaining twenty percent of the construction costs. Under this arrangement, the United States was to retain title to the road. In *Humboldt* we held that the limitations period began to run when the agreement was signed. Thus, the fact that the County and the United States cooperated in constructing the road did not toll the statute of limitations. The same principle applies here.

Here, California concedes that it knew that the property had been acquired in the United States' name and agrees that it was not entitled to special treatment or consideration other than that which would be accorded to claims of private parties. The facts in the case at bar do not compel a departure from the principles enunciated in *Humboldt*.

The district court's finding that the State of California's cause of action accrued in the early 1900's is supported by undisputed facts in the record. As there are no genuine issues of material fact, disposition by summary judgment was appropriate. The district court correctly concluded that appellant's action was time barred under 28 U.S.C. § 2409a(f).

AFFIRMED.