Paul G. **SHULTZ**, Plaintiff–Appellant,

v.

**DEPARTMENT OF ARMY, UNITED STATES of America,** Defendant–Appellee.

No. 87–4346.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1988.

Decided Sept. 28, 1989.

---

Joseph W. Sheehan, Fairbanks, Alaska, for plaintiff-appellant.

William B. Lazarus, Atty., Dept. of Justice, Lands Div., Wash., D.C., for defendant-appellee.

Before NELSON, BOOCHEVER and BRUNETTI, Circuit Judges.

NELSON, Circuit Judge:

Paul G. Shultz appeals from the district court's dismissal of his quiet title action against the United States for lack of jurisdiction. The district court found that the action was barred by 28 U.S.C. § 2409a(g) (1982), which prohibits civil actions to adjudicate disputed titles to real property in which the United States claims an interest unless they are commenced within twelve years of the date on which they accrued. We reverse. An action under section 2409a accrues when the landowner or his predecessors-in-interest knew or should have known of the United States' claim. Erection of a fence, gate, and generally unattended guard post alone was insufficient to put a reasonable landowner on notice of a claim. We hold that the earliest the cause of action accrued was when the Army began to restrict access through a pass system, and that if, when access to the road subsequently went unrestricted, Shultz or his predecessors-in-interest had reason to believe the government did not continue to claim an interest, the cause of action accrued when the government later asserted a right to restrict access. Therefore, we reverse the district court's grant of summary judgment to the defendants for lack of jurisdiction and remand for further proceedings.

## Standard of Review

Appellate review of a district court's grant of summary judgment for lack of jurisdiction under section 2409a is *de novo.*[1] *California v. Yuba Goldfields, Inc.,* 752 F.2d 393, 395 n. 1 (9th Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 526, 88 L.Ed.2d 458 (1985). A district court's factual findings on a jurisdictional issue must be accepted unless they are clearly erroneous. *Bruce v. United States,* 759 F.2d 755, 758 (9th Cir.1985). When the question of accrual of the statute of limitations turns on what a reasonable person should know, it is, like negligence, a mixed question of fact and law reviewed for clear error. *See Colleen v. United States,* 843 F.2d 329, 331 (9th Cir.1987) (citing *United States v. Mc Conney,* 728 F.2d 1195, 1204 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)).

## Discussion

Mr. Shultz owns real estate, which he purchased in parcels in 1974, 1979, and 1983, northeast of Fort Wainwright Military Reservation. The federal land withdrawals by which Fort Wainwright was established were made "subject to valid existing rights" to public roads in use before 1943. 43 U.S.C. § 932, *repealed,* Pub.L. No. 94–579 (Oct. 21, 1976). In the early 1950's, the Army erected a fence, gate, and guardhouse adjacent to the road to which Shultz claims a public right of access, now called Trainer Gate Road. The parties dispute whether, prior to 1974, the Army restricted access on Trainer Gate Road to the military base. The Army does not contest, however, Mr. Shultz's affiant's statement that the Army did not use a pass system or prohibit access to the road from 1974 to 1981. In 1981, the Army began to require those who sought to use the road to present passes. The Army refused Mr. Shultz access to the road in 1981 and thereafter.

■ Mr. Shultz sued the government in April, 1986, claiming a right of access to Trainer Gate Road. The Army argues that his claim is barred by 28 U.S.C. § 2409a, the statute of limitations for quiet title actions, because Shultz was put on notice of the government's claim to the property in the early 1950's when the Army erected a fence, gate, and guardhouse where Trainer Gate Road enters Fort Wainwright. Mr. Shultz argues that his claim against the United States is not barred because it accrued within the twelve-year statute of limitations. He argues that the government did not assert any apparent claim to the road until 1981, when it began to enforce a pass system. He asserts that the government must either have had a recorded instrument under AS–34.15.260(a)(3) or have manifested its interest in the highway in a manner similar to that required by Alaska law to establish adverse possession —open, notorious, continuous, and hostile—in order to trigger the statute of limitations period. Finally, Mr. Shultz argues that even if the Army had manifested an interest in the road prior to 1981, the statute of limitations period started anew after 1981, because the Army did not restrict use of the road from 1974 through 1981.

The district court granted summary judgment to the defendant on the ground that the fence and gate implied a government claim of a right to control access, whether exercised or not.

■ The Quiet Title Act, 28 U.S.C. § 2409a(g), provides:

> Any civil action under [the Quiet Title Act] shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff knew or should have known of the claim of the United States.

The court must strictly construe the Quiet Title Act's statute of limitations in favor of the government. *Block v. North Dakota ex rel. Bd. of Univ. & School Lands,* 461 U.S. 273, 287, 103 S.Ct. 1811, 1819–20, 75 L.Ed.2d 840 (1983); *Yuba,* 752 F.2d at 395.

---

1. Because the court found it did not have jurisdiction, its action is more properly characterized as a dismissal under Rule 12(b)(1) than as a summary judgment. *See D.C. Transit System, Inc. v. United States,* 717 F.2d 1438, 1440 n. 1 (D.C.Cir.1984).

The issue on appeal is whether the district court erred in finding that Shultz's cause of action accrued in the early 1950's. This circuit has rejected explicitly Shultz's contention that the cause of action accrues and the statute of limitations begins to run only when the United States acts in a manner openly hostile and adverse to a landowner's interest. *Yuba*, 752 F.2d at 397 ("Neither the language of the statute nor the legislative history of the Act requires a showing of adversity . . . ."). The statute of limitations is not triggered, however, when the United States' claim is ambiguous or vague. *See Yuba*, 752 F.2d at 397 (citing *Poverty Flats Land & Cattle Co. v. United States*, 706 F.2d 1078 (10th Cir.1983)).

The statutory term "should have known" imparts a test of reasonableness. *See, e.g., Yuba*, 752 F.2d at 396; *Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1388 (10th Cir.1980). The question is whether the United States' actions would have alerted a reasonable landowner that the government claimed an interest in the land. From 1974 until 1981, the Army did not seek to restrict access to the road in any way. The guard station was generally unattended. The parties dispute whether the Army required passes prior to 1974. The district court concluded that the dispute regarding passes was irrelevant because the Army's erection of a fence, gate, and guardhouse on a military base adjacent to the road was, alone, sufficient to alert a reasonable landowner of the Army's interest in the road itself. We disagree. Construction of the gate and guardhouse may indicate the military's interest in securing only the adjoining property, to which it had clear title, rather than to the right-of-way itself. Such construction could, as Mr. Shultz asserts, reasonably be interpreted as preparation for the possibility that in a time of national emergency the Army might have to close the gate to protect military operations, rather than as a present claim to an interest in the right-of-way.

No federal cases address the issue whether a fence, gate, and guardhouse on a military installation adjacent to a road-way are sufficient to give notice under section 2409a of a claim of interest in the roadway. The district court relied in part on *Park County v. United States*, 626 F.2d 718 (9th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 923, 66 L.Ed.2d 841 (1981), in which the Ninth Circuit found that a Forest Service sign and rock barrier on a purportedly public right-of-way created by 43 U.S.C. § 932, alerting the public that they were entering a national forest area from which motor vehicles were prohibited, constituted notice not only of a claim by the United States to the portion of the purported right-of-way located behind the sign, but also "alerted them to make reasonable inquiry" regarding a claim to the remainder of the right-of-way. The *Park County* court reasoned that the sign gave notice of a claim to the whole right-of-way because the remainder would have little utility if it were severed. *Id.* at 721 n. 6. *Park County* is distinguishable from the present case, however, on the ground that it is a disputed fact whether the government ever sought to regulate the flow of traffic on the road through Fort Wainwright through the use of guards, a posted sign, or otherwise, as it did through the national park.

The district court also relied on *Howell v. United States*, 519 F.Supp. 298, 304 (N.D. Ga.1981), in which the court found that the painting of boundary lines alone, without actual interference with the landowner's property, was sufficient to notify the landowner of the government's claim. This case too is distinguishable: whereas the painting of boundary lines is a clear assertion of a claim of interest in land, construction of a gate and a guardhouse, where neither is used, on a military installation next to a roadway that was purportedly public may indicate the military's interest in securing only the adjoining property, rather than in the public right-of-way. A reasonable person would interpret the unattended structures as preparation for the possibility that the Army might need to protect its military base. A reasonable person would not perceive the erection of such structures on land to which the military had title, as a present claim to an

interest in a roadway that is adjacent to that land, where the guardhouse is rarely attended and access to the roadway is completely unrestricted.

Neither the gate, the fence, nor the guardhouse interfered with the public's use of the road. No physical barriers were placed in the road and no posted notice informed the public that the road was closed to vehicular traffic. Therefore, the structures alone were insufficient to notify the public of the Army's claim of an interest in the roadway, and thus their construction did not trigger the statute of limitations.

■■■ If, however, the Army restricted access to the roadway prior to 1974, there is a factual issue whether Mr. Shultz's predecessors-in-interest reasonably should have been aware of a claim by the government of interest in the roadway.[2] The parties presented conflicting affidavits regarding whether the Army restricted access to the roadway prior to 1974, creating a genuine issue of material fact precluding summary judgment. *See, e.g., McLaughlin v. Liu,* 849 F.2d 1205, 1207 (9th Cir.1988). In addition, there is a factual issue whether the government's failure to restrict access to the base prior to 1981 led Shultz or his predecessors-in-interest reasonably to believe that the government did not continue to claim an interest in the roadway. The statute of limitations provision in the Quiet Title Act cannot reasonably be read to imply that if the government has once asserted a claim to property, twelve years later any quiet title action is forever barred. If the government has apparently abandoned any claim it once asserted, and then it reasserts a claim, the later assertion is a new claim and the statute of limitations for an action based on that claim accrues when it is asserted.

### Conclusion

We remand to the district court for a determination whether the Army restricted access to the roadway prior to 1974 so as

reasonably to put Mr. Shultz's predecessors-in-interest on notice of the government's claim to an interest in the right-of-way barring use by others. If Shultz's predecessors-in-interest had reasonable notice of the government's claim prior to 1974, the district court should determine if at some subsequent time Shultz or his predecessors had reason to believe the government did not continue to claim an interest. In that event, the present claim would have accrued when the government reasserted a claim.

REVERSED and REMANDED.

BRUNETTI, Circuit Judge, dissenting:

I disagree with the majority's holding that the Army's erection of a fence, gate and guardhouse next to the roadway was insufficient to put a reasonable landowner on notice of a claim. As the district court noted the fence, guardhouse and gate manifest a government claim of right to control access to the roadway, whether exercised or not.

The majority incorrectly interprets *Park County* as holding that the government must manifest a claim of interest in a right of way by an actual physical interference or a complete prohibition of the public's use to the roadway. In *Park County* we stated that the posted sign "put [the appellants] on notice that the United States claimed control over at least a substantial portion of the right-of-way. This claim should have put the appellants on constructive notice and alerted them to make reasonable inquiry as to the remainder of the purported right-of-way." *Park County,* 626 F.2d at 721 n. 6. We held that the statute of limitations contained in the Quiet Title Act barred the county's suit even as to the portion of the road in front of the rock barrier and sign which was not blocked or posted. *Id.* at 721.

As in *Park County,* Shultz and his predecessors in interest were alerted by the fence, gate and guardhouse to make a reasonable inquiry as to the government's

---

**2.** The requirement of passes would not necessarily give reasonable notice of the government's claim of an interest in the road. For example, in a time of emergency the govern-

ment might well close a road, if necessary to protect a military installation, without claiming an interest in the road.

claim to an interest in the roadway behind the structures. The Army need not have blocked Shultz's or his predecessors' path in order to communicate an interest in the roadway. The interest was amply shown by the structure and "should have put the appellants on constructive notice and alerted them to make reasonable inquiry as to the [government's claim]." *Id.* at 721 n. 6.

Neither the open gate structure in this case or the painted boundary lines in *Howell v. United States*, 519 F.Supp. 298, 304 (N.D.Ga.1981), physically prevent the public use of the government property, but the open gate like the painted boundary line gave notice of the government's claimed ownership of the road.

I disagree with majority's conclusion that the construction of a gate and guardhouse next to a roadway indicates only the military's interest in securing the adjoining property. True, the closing of the gate also blocks access to the land adjoining the road, but that is irrelevant to the notice given by the structure that the gate can block use of the road. Access can not be had to the adjoining land without using the road. If the government had wanted to block access to the adjoining land, they could have fenced it off from the road without erecting a guardhouse and gate to block the road.

The Brockman affidavit, submitted by Shultz, states that the military fenced the road and "allow[ed] us to use" it. Accordingly, there is no genuine issue of fact as to the permissive use of the roadway by Shultz and his predecessors nor is there a genuine issue of fact that Shultz and his predecessors had reason to know of the government's claim of a right to control access to the roadway.

Because I would hold that the structures sufficiently manifest the government's claim to the roadway, the factual issues of when the government imposed a pass requirement or restricted access is not material. I would affirm the district court.