**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CITY OF SANTA MONICA, | No. 14-55583 |
| Plaintiff - Appellant, | D.C. No. 2:13-cv-08046-JFW-VBK |
| v. | |
| UNITED STATES OF AMERICA; et al., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted March 11, 2016
Pasadena, California

Before: PREGERSON, PAEZ, and NGUYEN, Circuit Judges.

The City of Santa Monica (the "City") sued the United States, the Federal

Aviation Administration ("FAA"), and the FAA Administrator (collectively, the

"United States") to quiet title to approximately 168 acres of land (the "Airport

Land") on which the Santa Monica Municipal Airport now sits. The district court

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

held that the City's suit was time-barred under the Quiet Title Act's twelve-year statute of limitations, 28 U.S.C. § 2409a(g), and dismissed the complaint with prejudice under Federal Rule of Civil Procedure 12(b)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291. Reviewing *de novo*, *United States v. Peninsula Commc'ns, Inc.*, 287 F.3d 832, 836 (9th Cir. 2002), we reverse.

1. The district court erred in concluding that the statute of limitations issue is not inextricably intertwined with the merits of the City's Quiet Title Act claim. When jurisdictional and substantive issues are so intertwined that the question of jurisdiction is dependent on the merits, it is "both proper and necessary for the trial court first to resolve the merits of the claim" to determine its own jurisdiction. *See, e.g.*, *Augustine v. United States*, 704 F.2d 1074, 1077-79 (9th Cir. 1983); *see also Young v. United States*, 769 F.3d 1047, 1052-53 (9th Cir. 2014).

We cannot determine on this record whether the City knew or should have known that, under the 1948 Instrument of Transfer, title to the Airport Land would revert to the United States if the land ever ceased to be used as an airport. The parties do not dispute that the City owned title to the Airport Land in fee simple at the time that the United States and the City executed the Runway and Golf Course Leases in 1941. Both leases were set to terminate twelve months after the (then-unknown) end date of Proclamation 2487, and the City argues that neither lease

2

transferred title of its land to the United States. While the conveyances in the Instrument of Transfer must "be used for public airport purposes for the use and benefit of the public," those restrictions applied to "the land, buildings, structures, improvements and equipment *in which this instrument transfers any interest*" (emphasis added). Similarly, while the Instrument of Transfer restricts certain property from being "used, leased, sold, salvaged or disposed of . . . for other than airport purposes" without the United States' consent, the document again made clear that such restrictions applied to the "property *transferred by this instrument*" (emphasis added). The reverter clause likewise applied to "the title, right of possession and all other rights *transferred by this instrument*" (emphasis added). Given the language in the Instrument of Transfer, the parties' alleged property interests at the time of the original leases, and evidence of the parties' conduct, the question of whether the City had "notice" of the United States' claim of a perpetual reversionary interest in the Airport Land is inextricably intertwined with the ultimate scope and validity of that claim. *Augustine*, 704 F.2d at 1078-79; *see also Shultz v. Dept. of Army*, 886 F.2d 1157, 1160 (9th Cir. 1989).

Contrary to the United States' arguments, the fact that the Instrument of Transfer's restrictions "run with the land" does not conclusively establish notice of a perpetual reversionary interest in the title to the Airport Land itself. While that

3

language likely imposes the same requirements set forth in the Instrument of Transfer on subsequent owners and assigns, we cannot — without reaching the merits — determine what a reasonable landowner should have known about the United States' claim in 1948. *See, e.g.*, *Citizens for Covenant Compliance v. Anderson*, 906 P.2d 1314, 1318 (Cal. 1995); *see also Shultz*, 886 F.2d at 1160. Similarly, without reaching the merits, we cannot conclude that recording the Instrument of Transfer as a quitclaim deed or using the phrase "title" established notice of a perpetual reversionary interest in the Airport Land itself; a quitclaim deed simply reflects the termination of a claim to an interest. Moreover, a quitclaim deed "operates to transfer only what right, title and interest the grantor may have" in the first place. *See, e.g.*, *Hagan v. Gardner*, 283 F.2d 643, 646 (9th Cir. 1960).

Indeed, the merits and notice issues in this case may ultimately depend on the disputed significance of the parties' conduct between World War II and 2008. For example, when the City requested in 1952 that the United States release certain parcels of the land from restrictions in the Instrument of Transfer, the surrendered Runway and Golf Course leases had not yet expired. Thus, whether the City obtained the 1952 release because the Instrument of Transfer conveyed an unexpired leasehold interest and federal improvements (as the City argues), or a

4

reversionary interest in title to the Airport Land itself (as the United States argues), is inextricably intertwined with which party's reading of the Instrument of Transfer is ultimately correct.

The same is true of the other conduct in the record. For instance, the California Attorney General's Opinion from 1975 does not definitively show that the City knew of the United States' claimed interest in title to the Airport Land. Like the City Attorney's opinion in 1962, the Attorney General's conclusion was based on both the Instrument of Transfer *and* numerous grant agreements restricting the City's use of airport property which, at the time, still may have contained World War II improvements made by the United States. The Attorney General's opinion stated only that the City could not "at the present time" cease using the land for airport purposes. It did not mention the reverter clause. And whether the United States later disclaimed its purported interest in the 1984 Settlement Agreement likewise involves disputed questions of fact potentially implicating both the merits of the Quiet Title Act claim and the "notice" issues. *See Michel v. United States*, 65 F.3d 130, 133 (9th Cir. 1995) (per curiam) ("If the government has apparently abandoned any claim it once asserted, and then it reasserts a claim, the later assertion is a new claim and the statute of limitations for an action based on that claim accrues when it is asserted."); *Shultz*, 886 F.2d at

5

1061. Because these issues "go to the heart of" the merits, the district court erred by prematurely dismissing this action on jurisdictional grounds. *See Augustine*, 704 F.2d at 1078-79; *cf. Young*, 769 F.3d at 1052 ("In this case, the question whether the Park Service knew or should have known of the hazard created by the transformer is a disputed issue of jurisdictional fact that is 'so intertwined' with the substantive dispute that resolution of the former depends, at least in part, on resolution of the latter.").[1]

2.      For similar reasons, the district court erred in holding that the Instrument of Transfer "clouded" title to the Airport Land. The twelve-year limitation period in 28 U.S.C. § 2409a(g) "begins when a claim of title in favor of the United States becomes *adverse* to the plaintiff." *Leisnoi, Inc. v. United States*, 267 F.3d 1019, 1025 (9th Cir. 2001) (emphasis added) (citing *Michel*, 65 F.3d at 131-32). Thus, even though the United States and the City both openly claimed property interests in the airport, that fact alone did not start the statute of limitations unless the claimed property interests conflicted. *See, e.g.*, *Michel*, 65 F.3d at 132 (citing *Werner v. United States*, 9 F.3d 1514, 1516 (11th Cir. 1993));

_____

[1] By contrast, in a case cited by the parties, *Kingman Reef Atoll Investments, LLC v. United States*, the record was clear that the plaintiff "had actual notice that the United States claimed an interest in Kingman reef" because the plaintiff himself "acknowledged that . . . ownership [of the property] presumably rests with the State or Navy Department." 541 F.3d 1189, 1197 (9th Cir. 2008).

6

*Shultz*, 886 F.3d at 1160-61. Here, the United States' alleged contingent reversionary interests could have been consistent with the City retaining fee simple title to the Airport Land. *McFarland v. Norton*, 425 F.3d 724, 727-28 (9th Cir. 2005); *Narramore v. United States*, 852 F.2d 485, 492 (9th Cir. 1988), *vacated and remanded on other grounds*, 960 F.2d 1048 (Fed. Cir. 1992). At this stage, nothing in the record conclusively shows otherwise.

      **REVERSED AND REMANDED.**