Thomas F. **WERNER**, Ruth E. Werner, David Litwack, Yvette A. Litwack, William Wargo, Lynn Wargo, Plaintiffs–Appellants,

v.

**UNITED STATES of America,** Defendant–Appellee.

No. 92–3040.

United States Court of Appeals, Eleventh Circuit.

Dec. 28, 1993.

D. Michael Chesser, Chesser, Wingard, Barr, Whitney, Flowers & Fleet, P.A., Shalimar, FL, for plaintiffs-appellants.

Michael P. Finney, Asst. U.S. Atty., Office of the U.S. Atty., Pensacola, FL, Donald R. Fitch, Atty. Advisor, Office of the Staff Judge Advocate, Air Force Development Test Center, Eglin Air Force Base, FL, for defendant-appellee.

Before ANDERSON and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

GODBOLD, Senior Circuit Judge:

Appellants, plaintiffs below, are owners of a small parcel of land located on Choctawhatchee Bay in northern Florida. The property is bounded on three sides by water and on the fourth side by land that is part of Eglin Air Force Base, a facility of the United States. It is physically impossible to enter plaintiffs' property by land without crossing over the adjoining Eglin land.

On March 15, 1991 plaintiffs sued the United States pursuant to 28 U.S.C. § 2409a(a),[1] the Quiet Title Act, seeking a declaration that they had acquired an easement of necessity pursuant to Florida statute § 704.01(2).[2] The subject matter of the claimed easement is an existing road, reaching from the nearest public road, across the Eglin land, and to the boundary of plaintiffs' property. The district court granted the government's motion for summary judgment on the ground that plaintiffs were barred by the 12–year statute of limitations of 28 U.S.C. § 2409a(g), formerly § 2409a(f).[3] We hold that the district court erred in granting summary judgment.

### The background.

The United States government has owned the land that is now Eglin Air Force Base since 1821, when Florida and parts of Alabama and Mississippi were acquired from Spain by a treaty of cession. The Eglin land relevant to this case was a part of national forest land transferred from the Agriculture Department to the War Department in 1940 and in that year became part of Eglin Air Force Base.

Plaintiffs trace their title from a deed from one private owner to another dated in 1922. Only private owners appear in their chain of title.

The portion of Eglin across which the plaintiffs seek an easement is known as White Point. White Point Road, the public roadway nearest plaintiffs' property, runs in a general north-south direction within Eglin and ends at Choctawhatchee Bay. White Point Road is approximately one and one-half miles from the western border of plaintiffs' property.

The portion of Eglin lying between White Point Road and plaintiffs' western border is now a recreation area. Prior to its designation as a recreation area in 1956 the site was the location of Eglin housing and contained an access road linking the housing complex to White Point Road. Shortly after the Air Force removed the housing it extended this road approximately three-tenths of a mile to the western border of plaintiffs' property, for

---

1. § 2409a(a):

    The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights (with exceptions not relevant).

2. § 704.01(2):

    **Statutory way of necessity exclusive of common-law right.** Based on public policy, convenience, and necessity, a statutory way of necessity exclusive of any common-law right exists when any land or portion thereof outside any municipality which is being used or desired to be used for a dwelling or dwellings or for agricultural or for timber raising or cutting or stockraising purposes shall be shut off or hemmed in by lands, fencing, or other improvements of other persons so that no practicable route of egress or ingress shall be available therefrom to the nearest practicable public or private road. The owner or tenant thereof, or anyone in their behalf, lawfully may use and maintain an easement for persons, vehicles, stock, franchised cable television service, and any utility service, including, but not limited to, water, wastewater, reclaimed water, natural gas, electricity, and telephone service, over, under, through, and upon the lands which lie between the said shut-off or hemmed-in lands and such public or private road by means of the nearest practical route, considering the use to which said lands are being put; and the use thereof, as aforesaid, shall not constitute a trespass; nor shall the party thus using the same be liable in damages for the use thereof; provided that such easement shall be used only in an orderly and proper manner. As amended by Laws 1991, c. 91–177.

    The 1991 Amendments are not relevant to the issues before us.

3. § 2409a(g):

    Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

the purpose, the government states, of better serving the recreation area and a nearby Navy observation site.

Plaintiffs' tract was purchased by the Werner plaintiffs in 1987. They subdivided the property into three lots, retained one, and sold the other two to the other plaintiffs. As required by § 704.01(2), plaintiffs' property is outside a municipality, and it is not disputed that they desire to use it for dwelling purposes. In September 1987 two of the plaintiffs filed on the county public records a subdivision plot that indicates an existing 20–foot Air Force easement extending from their subdivision westerly across the Eglin land to White Point Road. This alleged easement tracks the location of the access road that serves the recreation area and reaches plaintiffs' property. In 1980 the government built an electrically-operated gate where the access road reaches plaintiff's property. For a time plaintiffs were provided with cards that unlocked the gate. Later the procedure was changed so that the gate is open from 7:00 a.m. to 10:00 p.m. and then it is locked, leaving plaintiffs unable to reach their property by the access road during the remaining night hours.

### Discussion.

■ Plaintiffs do not claim a common law easement or an implied easement created by Florida statute § 704.01(1). They claim a statutory easement of necessity, created by § 704.01(2). They brought suit pursuant to 28 U.S.C. § 2409a(a), which authorizes suit against the United States in a civil action to adjudicate a disputed title to real property in which the United States claims an interest.[4] An action under § 2409a(a) must be brought within 12 years of the time the action accrued. 28 U.S.C. § 2409a(g).

4. In this appeal the government does not contend that suit may not be brought under § 2409a(a) to adjudicate a claim of the existence of a statutory easement of necessity created by Florida statute § 704.01(2).

5. Plaintiffs do not attempt to establish a common law easement based upon prior permissive usage or upon long-time adverse usage. They assert a statutory easement which, by the terms of the Florida statute, is based upon necessity of access.

The government contended, and the district court accepted, that the statute of limitations issue turned upon whether plaintiffs and their predecessors in interest either knew or should have known for more than 12 years before filing suit that the government claimed some interest in or ownership of the Eglin property. From the facts we have set out it was obvious that plaintiffs and their predecessors in title knew or should have known of government ownership or interest for more than 12 years, so summary judgment was granted. But the position of the government, adopted by the district court, misperceives the issue. Plaintiffs do not dispute the government's ownership, nor do they deny that they knew the government was owner of the land between their property and White Point Road. Rather they look to the nature or extent of the government's interest and describe it not as unqualified ownership but as ownership limited or qualified by permissive use of the roadway by others. The limitations issue then turns upon whether, prior to the erection of the gate, plaintiffs or others had been permitted to utilize the road for access to plaintiffs' property and, if plaintiffs or others had been so permitted, when did plaintiffs know, or should have known, that the government had changed its position and, adversely to the interests of plaintiffs, denied or limited the use of the roadway for access to plaintiffs' property.[5] Pretermitting questions of who actually used the roadway as access to plaintiffs' property, and the extent of use, it is clear that ingress or egress from plaintiffs' property to White Point Road was available from around 1956 when the road was extended to plaintiffs' property until 1980 when access was limited by the erection of the gate.

It is undisputed that necessity of access exists. The history of prior usage, and the date that the government acted adversely to plaintiffs to terminate prior usage, are relevant not as the predicate for existence of an easement but to determine for statute of limitations purposes the scope of the government's interest and the time at which the plaintiffs knew or should have known of the government's claim that it could bar or limit the access previously permitted.

Principles applicable to this case are illuminated by several cases. In *Park County, Montana v. U.S.*, 626 F.2d 718 (9th Cir.1980), plaintiffs, counties of the State of Montana, filed suit in 1976 against the United States under § 2409a(a) to quiet title to an easement across lands of a national forest. The district court dismissed pursuant to the statute of limitations, then § 2409a(f). The forest area in which the claimed right of way existed had been the property of the United States since 1902. The major portion of the right of way claimed by the counties lay on a route that followed Forest Service trails that had been maintained since the early part of the twentieth century. Part of the alleged right of way lay in a portion of the national forest that in 1932 was designated as a Primitive Area. In 1962 the Forest Service placed a rock barrier and a sign where the existent trail entered the Primitive Area, prohibiting entry by motor vehicles, a use not previously forbidden. The court of appeals agreed with the district court that plaintiffs knew or should have known of the claim of the United States to the purported right of way more than 12 years before the suit was brought. But the court did not measure the beginning of the limitations period from 1902, when the government became owner of the property, or from the time that the Forest Service began maintaining trails in the early part of the twentieth century, or from 1932 when the relevant part of the property was established as a Primitive Area, but rather from 1962, when the rock barrier and the sign were placed, prohibiting the use by motor vehicles.

In *Narramore v. U.S.*, 852 F.2d 485 (9th Cir.1988), Congress had authorized the construction of a dam and reservoir substantially in accordance with recommendations submitted to Congress by the chief of the Corps of Engineers. Those recommendations included a schedule for the extent and duration of release of flood waters from the reservoir, known as Plan A. The Corps of Engineers, which operated the dam, never followed Plan A. Landowners sued in 1980 under § 2904a(a) to compel compliance with Plan A. The district court held the quiet title claim barred by the 12-year statute of § 2409a(g). The Corps of Engineers had failed to release

water in accordance with Plan A as early as January 1966. Some landowners had sued in June 1966 to compel compliance with Plan A, but the suit had been dismissed on sovereign immunity grounds. In the second case the Corps tendered evidence that it had released waters more rapidly after the 1966 suit was filed. Its public position, however, until 1977 was that Plan A was still in effect.

The limitations issue turned on whether plaintiffs either knew or should have known before November 1968 (12 years before the 1980 filing) that the government, as owner and operator of the dam and reservoir, claimed that it was not bound to comply with Plan A. The court of appeals held that there was a factual issue of whether the landowners had actual notice arising out of the 1966 failure to comply, because the flooding was of short duration and was followed by what could be perceived as government rectification of a mistake. *Id.* at 492. And it held there was no constructive notice of a policy of noncompliance, because the public policy of the Corps until 1978 was that Plan A was in effect. *Id.* Therefore, the court erred in granting summary judgment on the limitations issue. Thus, in *Narramore* as here, the plaintiffs showed rights or benefits previously enjoyed, in that case pursuant to a formalized plan, in this case pursuant to permissive usage, which the government asserted that it could remove or limit. In *Narramore* the date that triggered the beginning of the 12-year limitations period was not the date on which the landowners acquired knowledge that the government was owner and operator of the dam and reservoir but the date on which knowledge was acquired that the government was seeking to impose limitations or restrictions on the Plan A benefits that the landowners enjoyed from the government with respect to the property.

In *Kinscherff v. U.S.*, 586 F.2d 159 (10th Cir.1978), the United States had built on its land a road to a dam site. Plaintiffs sued pursuant to § 2409a(a), alleging that they wished to develop their adjoining land to which the road was the sole access and that the United States would not permit them to use the road to bring in equipment, machinery, or material. The district court dis-

missed for failure to state a cause of action. The Tenth Circuit reversed on the ground that whether an easement of necessity existed was a mixed question of law and fact. With respect to the statute of limitations the court held:

> [T]he limitation issue is a mixed question of fact and law as to whether the patentee or a successor in interest knew or should have known of the Government's *claim of no easement or of a limited easement.* Again we express no opinion as to such limitation period, and the facts pertinent to the commencement of the limitation period must be developed. (Emphasis added.)

*Id.* at 161. In *Kinscherff,* as in the present case, the triggering event for statute of limitations purposes was not the time at which the claimants knew that the government was owner but the time at which they knew or should have known that the government claimed that it could deny use by the plaintiffs of the access road to their property because there was no easement (or only a limited easement) permitting such use.

*Elk Mountain Safari, Inc. v. U.S.,* 645 F.Supp. 151 (D.Wyoming 1986), follows the same principles. A landowner granted a right of way to the government in 1957. A subsequent owner sued the government, asserting that the easement was limited to government use to administer public lands pursuant to federal statutes, while the government claimed that the easement encompassed public use. The government raised the 12–year statute of limitations issue of § 2409a(f). The court held:

> [T]he United States' claim to a public roadway was first openly contended in 1983 or 1984 and [that] plaintiffs' quiet-title action was filed within the requisite twelve-year statute of limitations period. 28 U.S.C. § 2409a; see also *Vincent Murphy Chevrolet Co. v. U.S.,* 766 F.2d 449 (10th Cir. 1985). A claim under § 2409a "accrues when the plaintiff has a reasonable awareness that the government claims some interest adverse to the plaintiff's." *Id.* at 452. *The adverse interest claimed by the United States is its position that the roadway should be open to the general public;* this was not expressed until 1983 or 1984

and the limitations period did not begin to run until that time. (Emphasis added.) *Id.* at 155–56. An internal manual of the Bureau of Land Management of the Department of Interior, which had acquired the easement, stated the opinion that the roadway provided public access, but this was not sufficient to provide the plaintiff with reasonable awareness of the government's claim.

These cases may be compared with *Vincent Murphy Chevrolet Co., Inc. v. U.S.,* 766 F.2d 449 (10th Cir.1985). The landowner acquired land by purchase from the United States. The deed contained sweeping restrictions, prohibitions and reserved rights in the government, presumably imposed because of nearby military activity. More than 12 years later the owner sued under § 2409a(a) to remove the limitations in the deed but was time-barred by the 12–year statute. The owner had notice of the restrictions from the deed itself. The district court and the court of appeals rejected the owner's theory that the purposes of the restrictions had disappeared because military activity had ceased and the character of surrounding land had changed and that the statute of limitations only began to run when the government, within the 12 years, insisted that the restrictions were still valid. There was not, as in the case before us, any holding out or permission by the government that its claim was anything less than its rights set out in the deed, followed by a cessation of such holding out or permission that would adversely affect one previously enjoying the benefits thereof.

■ In their brief to this court plaintiffs have discussed *Elk Mountain, Kinscherff,* and *Narramore* and have predicated their appeal on the principles taught by those cases. The government has not responded to those cases (or to *Park County, Montana,* which it cites for another proposition) but rather, in inappropriate language, has described plaintiffs' argument as "border[ing] on a sanctionable abuse of the court for its speciousness," as "irrelevant," and "more disingenuous than simply mistaken." The primary position of the government is that the notice that triggers the statute of limitations need be only that the government claims

some interest—any interest—in the property. We reject this theory. For statute of limitations purposes, the first inquiry must define the government's claim and then one must look to the time that the government, acting adversely to the interests of others, seeks to expand that claim. The district court erred in deciding the limitations issue by summary judgment.

The motion by the government to strike plaintiffs' reply brief and award sanctions is DENIED. The summary judgment is REVERSED and the case REMANDED for further proceedings.