**Edward E. LOMBARD, Asa P. Lombard, III, Edith Lombard Cassick, Ruth Lombard Gourley, Florence Lombard Brown, Barbara Lombard Banuk, Susan Lombard Black, and Alton Horte, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. Civ.A. 97–10725–PBS.**

United States District Court,
D. Massachusetts.

Nov. 30, 1998.

John D. Hallisey, Orleans, MA, for Edward E. Lombard, plaintiff.

George M. Dallas, Hovey, Urbelis, Fieldsteel & Bailin, Andrew L. Freeman, U.S. Attorney's Office, Julie S. Schrager, United States Attorney's Office, Boston, MA, for United States of America, defendant.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

This case concerns a belated claim to title to land on Bound Brook Island, located within the Cape Cod National Seashore. The plaintiffs, Edward Lombard and his siblings, cousins, and nieces, have filed a partition action against the United States pursuant to 28 U.S.C. § 2409, claiming that the government and they are tenants in common. The government, which purchased the property in the early 1960s, moves for summary judgment on the ground that there is a real and substantial dispute as to plaintiffs' interest in the property, which removes this action from the scope of the partition statute.

Alternatively, plaintiffs seek leave to amend the complaint to assert an action to quiet title pursuant to 28 U.S.C. § 2409a. The government contends that such an amendment would be futile because the action is barred by the twelve-year statute of limitations. Plaintiffs have also filed a motion for summary judgment asking this Court to enter a judgment that plaintiffs have record title.[1] After hearing, this Court **ALLOWS** defendant's motion for summary judgment and **DENIES** plaintiffs' motion.

**1.** Plaintiff Alton Horte, age 89, did not join in this motion for summary judgment because he was unable to furnish genealogical information to the title examiner. The Court allowed three

### I. *BACKGROUND*

Viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, the Court treats the following material facts as undisputed. *See Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir. 1995).

The Lombard family has its roots deep in the sands of Cape Cod. Thomas Lombard (whose grandfather was with General Washington at Valley Forge) owned the Bound Brook Island real estate until his death in 1873. He was survived by five children, Edward Lombard, Richard S. Lombard, Benjamin F. Lombard, David C. Lombard, and Mary M. Lombard Cobb. The plaintiffs are descendants of Richard S. Lombard and Edward Lombard, two of the five children. At the time of Thomas Lombard's death, the property contained his homestead, which no longer exists. Completely surrounded by the disputed property is a Lombard family cemetery still in existence today.

In 1924, David C. Lombard and Mary M. Lombard Cobb conveyed the Brook Bound Island property to George Higgins, as evidenced by the deed recorded on October 31, 1924, in Barnstable County. Excluded from the sale was the family cemetery and access thereto.

In 1935, George Higgins filed a petition with the Massachusetts Land Court (Case No. 15795) to register and confirm his title to seven parcels of land, aggregating approximately 145 acres in the Brook Bound Island area of North Wellfleet. Included in that land were the 8.7 acres on Brook Bound Island purchased from David Lombard and Mary Lombard Cobb. Henry Lombard, the son of Benjamin F. Lombard and grandson of Thomas Lombard, filed an answer in the Land Court case claiming that his father had a right, title, or interest in the Lombard Lot that was never released, and that "as he is an heir of said Benjamin Lombard, he therefore holds an interest in said Lot, which interest he wishes to be adjudicated by this Court."

additional descendants to intervene as plaintiffs: Charleton E. Smith, Barbara E. Baines, and Virginia H. Hart.

Subsequently, the Land Court judge wrote that there was an "infirmity for which I have no remedy to suggest at present by reason of the fact that only two of the four people presumably claiming under one Thomas Lombard have conveyed to the petition in 1924." He suggested that Higgins' counsel procure an affidavit from David Lombard. David Lombard provided such an affidavit on April 19, 1935, claiming that he was the only one in the family who lived in Wellfleet, cared for the property, or claimed an interest in it. After Henry Lombard's opposition was filed, Higgins moved the court to sever the "Lombard Lot," consisting of the 8.7 acres, to another case. The disputed property was then assigned Registration No. 15855. The action was marked "inactive" on June 4, 1957, and ordered dismissed without prejudice on June 5, 1958. The docket reflected only the marking of "inactive" in 1957 and not the order of dismissal in 1958. Perhaps because of the docketing glitch, the case remained inactive on the docket for another twenty years. A judgment of dismissal was issued for lack of prosecution on November 1, 1976.

Beginning in 1961, the United States started acquiring land to form the Cape Cod National Seashore, as authorized by the Cape Cod National Seashore Act of August 7, 1961, Pub.L. No. 87–126, 75 Stat. 284 (codified at 16 U.S.C. §§ 459b to 459b–8). In 1962, the United States, through its Department of Interior and National Park Service, negotiated to purchase several pieces of property from George Higgins and his wife, including the 8.7 acres formerly owned by Thomas Lombard, which the government designated as Tract 25W–4011. Inside this tract is the Lombard family cemetery (Tract 25–5729), which continues to be owned by plaintiffs, who also possess a right of way across Tract 25W–4011 in order to reach the cemetery.

A Preliminary Certificate and Binder was prepared on December 19, 1962, by Home Title Guarantee Company. The title examination included as exceptions to the certification the "persons claiming under the heirs of Thomas Lombard except as to David Lombard and Mary M. Cobb" and the Lombard burial ground located within the property. An appraisal determined that the property was completely unimproved except for the Lombard family cemetery. The United States took title from Higgins on December 28, 1962, and the deed was recorded in Barnstable County on December 31, 1962.

In 1963, Higgins filed an action to quiet title pursuant to Mass.Gen.L. ch. 240, §§ 6–10, in Barnstable County (Equity No. 27434). The respondents included "Thomas Lombard" and "his Heirs and Devisees." A citation was issued to Thomas Lombard by the court on October 16, 1963. The Deputy Sheriff certified that service was made, pursuant to Mass.Gen.L. ch. 240, § 7, by publication in *The Cape Cod Standard Times* on October 25, November 1, and November 8, 1963, and that the citation was posted both in the Barnstable County Registry of Deeds and on the property.

George Higgins died on February 19, 1964, and his wife, Katherine Higgins, was substituted as petitioner in the quiet title action. Upon her request for the appointment of a guardian ad litem, pursuant to Mass.Gen.L. ch. 240, § 8, the court appointed James H. Quirk, Esq., on May 11, 1964. In his report to the court, Quirk confirmed George Higgins' ownership interest through affidavits of adverse possession from three local residents identified by the government. The affidavits stated that Higgins had been in actual possession of the property for thirty-five years, that he did not recognize anyone as having any claims to a property interest, that he paid real estate taxes during his ownership, and that he exercised acts of ownership. On August 20, 1964, the Barnstable Superior Court issued a Final Decree in Equity Action No. 27434, confirming title to the property in Katherine F. Higgins "free and clear of all liens and encumbrances except the rights of the Lombard family in the Burial Lot on said premises and a right of way or access thereto from the public road over the remaining land of said Katherine Higgins." After the Superior Court had established clear title, the United States paid Katherine Higgins for the property pursuant to their agreement.

The Lombard family has continued to visit the cemetery throughout the years. At some

point prior to September 1977, the Forest Service gated the road formerly used by the Lombards to access the cemetery. Upon their request, a key was provided. Later, the road was allowed to revegetate, and vehicle access was restricted. Many of the plaintiffs recall childhood picnics and blueberry picking on the land surrounding the cemetery.

On April 4, 1997, plaintiffs filed the present action to partition the Brook Bound Island property pursuant to 28 U.S.C. § 2409.

## II. *DISCUSSION*

A motion for summary judgment must be allowed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 105 (1st Cir.1988) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). All reasonable inferences must be drawn in favor of the non-moving party, but "those inferences must flow rationally from the underlying facts; that is, a suggested inference must ascend to what common sense and human experience indicates is an acceptable level of probability." *Rubinovitz v. Rogato,* 60 F.3d 906, 911 (1st.Cir.1995) (citing *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 743 (1st Cir.1995)). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 37 (1st Cir.1995) (quoting *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505).

## A. *Partition Action*

The government argues that the order of the Barnstable County Superior Court quieting the title of George and Katherine Higgins creates a title dispute that takes this action beyond the scope of 28 U.S.C. § 2409. Plaintiffs brought this action pursuant to 28 U.S.C. § 2409, which provides:

> Any civil action by any tenant in common or joint tenant owning an individual interest in lands, where the United States is one of such tenants in common or joint tenants, against the United States alone or against the United States and any other of such owners, shall proceed, and be determined, in the same manner as would a similar action between private persons.

This Court has original jurisdiction over such actions.[2] Section 2409 "is confined to those cases in which the plaintiff's title is undisputed." *Stanton v. United States,* 434 F.2d 1273, 1276–77 (5th Cir.1970) (dismissing a § 2409 claim to tenancy in common with the United States where plaintiffs claimed that they owned an undivided interest by virtue of interstate succession and possession in fact). "[T]he partition statute is unavailable where a determination of a dispute as to plaintiff's interest in property must be made as a predicate for the partition claim." *Stubbs v. United States,* 620 F.2d 775, 782 (10th Cir. 1980). Where there is a substantial dispute as to title, a plaintiff must first file a quiet title action pursuant to 28 U.S.C. § 2409a. *See id.* 620 F.2d at 783.

Plaintiffs argue that the Superior Court judgment is void because the Land Court still had exclusive subject matter jurisdiction in 1963, given that the Land Court case (No. 15795) was marked "inactive" and not entered on the docket as dismissed until November 1, 1976. As relief, they ask this Court to enter judgment declaring that the 1963 Barnstable order is unenforceable for lack of subject matter jurisdiction in the Superior Court.[3] Alternatively, plaintiffs ar-

---

2. "The district courts shall have original jurisdiction of any civil action commenced by any tenant in common or joint tenant for the partition of lands where the United States is one of the tenants in common or joint tenants." 28 U.S.C. § 1347.

3. Actually, while I don't have to resolve the matter, it appears from the Court pleadings that the

gue that the order is unenforceable because there was inadequate notice to the Lombard heirs. The government retorts that because final judgment was entered thirty-five years ago, and no appeal was taken, the only appropriate vehicle for seeking relief from the judgment is Mass.R.Civ.P. 60(b)(4). It adds that the notice met statutory requirements. I need not enter this thicket. Because plaintiffs' claim of tenancy in common with the government is far from clear and undisputed, § 2409 does not provide a cause of action to partition the property. Accordingly, this Court lacks subject matter jurisdiction under 28 U.S.C. § 1347.

## B. *Quiet Title Action*

■ After argument on the motions for summary judgment, plaintiffs filed a motion to amend the complaint to add additional grounds for the Court's jurisdiction. To the extent that plaintiffs seek to assert jurisdiction under the Quiet Title Act, 28 U.S.C. §§ 2409a and 1346(f), the Court **DENIES** the motion as futile because the action is time-barred. With respect to the other proposed amendments, the motion to amend is also denied as untimely.

Section 2409a provides that "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." This Court has exclusive original jurisdiction over quiet title actions.[4] The quiet title statute contains the following statute of limitations:

> Any civil action under this section ... shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(g). The Supreme Court has recently described the strong policy con-

cerns underpinning the statute of limitations: "It is of special importance that landowners know with certainty what their rights are, and the period during which those rights may be subject to challenge." *United States v. Beggerly,* —— U.S. ——, ——, 118 S.Ct. 1862, 1868, 141 L.Ed.2d 32 (1998) (declining to extend this already "generous" statute of limitations by equitable Tolling). Because sovereign immunity is involved, there must be "strict compliance with the requirement that any action must be commenced within twelve years of its accrual." *Economic Dev. and Indus. Corp. v. United States,* 720 F.2d 1, 3 (1st Cir.1983) (citing *Block v. North Dakota,* 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983)).

The inquiry whether the plaintiffs should have known of the United States' adverse interest is governed by "a test of reasonableness." *Patterson v. Buffalo Nat'l River,* 76 F.3d 221, 224 (8th Cir.1996) (citing *State of North Dakota ex rel. Bd. of Univ. and Sch. Lands v. Block,* 789 F.2d 1308, 1312 (8th Cir.1986)). "Section 2409a does not require that the plaintiff have knowledge of the full contours of the Government's claim before the action accrues. Rather, all that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff." *D.C. Transit Sys., Inc. v. United States,* 531 F.Supp. 808, 811 (D.D.C.1982) (citing *United States v. Bedford Assocs.,* 657 F.2d 1300, 1316 & n. 16 (2d Cir.1981)). "If a claimant asserts fee title to disputed property, notice of a government claim that creates even a cloud on that title may be sufficient to trigger the limitations period." *Michel v. United States,* 65 F.3d 130, 132 (9th Cir.1995) (citing *California v. Yuba Goldfields,* 752 F.2d 393, 394–97 (9th Cir.1985)).

Plaintiffs argue that the twelve-year statute of limitations does not begin to run until the plaintiffs knew or should have known that the United States had begun to assert an interest adverse to the Lombards' sixty-percent interest, not when they knew that the government had acquired a forty-percent

---

Land Court action was ordered dismissed without prejudice in 1958.

**4.** "The district courts shall have exclusive original jurisdiction of civil actions under § 2409a to

quiet title to an estate or interest in real property in which an interest is claimed by the United States." 28 U.S.C. § 1346(f).

interest. Although plaintiffs concede that they can be charged with knowledge of the United States' *common* interest in the property with their own, they insist that none were aware of the government's exclusive *adverse* interest until the commencement of this suit.

Here, the undisputed evidence in the record is that most of the plaintiffs have believed for decades that David Lombard had stolen the family birthright and sold it to Higgins. Edward E. Lombard, Asa P. Lombard, Jr., Edith Lombard Cassick, Alton Horte, and Ruth Lombard Gourley testified that they knew for over twelve years that David Lombard and Mary Lombard Cobb had conveyed plaintiffs' interest to George Higgins. Edward Lombard concedes that he knew in the 1950s that the property had been conveyed to Higgins. (Dep. Tr. at 12.) Edith Lombard Cassick has believed since the 1960s that David Lombard and Mary Cobb Lombard "did wrong by [her] grandmother" by stealing the Bound Brook Island property and selling it to Higgins. (Dep. Tr. at 9, 13–15.) In fact, Edith Cassick remembers that Higgins tried to persuade her father, Asa Lombard, and another uncle to sell their claimed property interest to him in the 1960s, but they refused. (Dep. Tr. at 24.) Alton Horte testified that Asa Lombard, Jr., and he talked to an attorney twenty years ago when they learned that David Lombard had conveyed the property without notice. (Dep. Tr. at 14.) Ruth Lombard Gourley testified that she had known about the conveyance to Higgins since she was a child. (Dep. Tr. at 12.)

Three plaintiffs rest in a different procedural posture. Florence Lombard Brown (Edward's sister who lives in California) and Barbara Lombard Banuk profess lack of knowledge of any conveyance. Brown testified that she relied on her brother to handle any matters relating to the property. (Dep. Tr. at 14.) The record before the Court is sparser with respect to Banuk and Susan Lombard Black, except that they occasionally visited the cemetery. In light of the widespread family knowledge of the sale over such a long period of time, they could easily have learned the status of the property by making inquiry.

Several of the plaintiffs, including Edith Lombard Cassick, Edward Lombard, Asa Lombard, III, Barbara Lombard Banuk, and Susan Lombard Black, recall learning of the Cape Cod National Seashore in the 1960s, and most knew that the United States had acquired the Brook Bound Island property for that purpose. Many of the plaintiffs (i.e., Cassick, Asa Lombard, Edward Lombard, Banuk) knew that the government was responsible for a locked gate that prevented access to the cemetery, and that the Park Service later allowed trees to grow in the path. Edward Lombard recalls "complaining bitterly to [the National Seashore] about their closing the road and shutting it off from us, so we had no access to it." (Dep. Tr. at 25.) On September 12, 1997, Asa Lombard sent a peremptory letter to the superintendent of the National Seashore complaining about the barrier at the entrance of the access road, demanding removal of the barrier or a key to the lock, and demanding that the government clean out the road to the cemetery.

Plaintiffs admit that they have not paid property taxes on the land surrounding the family cemetery, have not maintained or improved the surrounding land in any way, have not possessed the land, and have not contacted the Park Service or the Town of Wellfleet about their interest in the Brook Bound Island property. At most, they have occasionally visited the family cemetery, picked blueberries, and had picnics on the adjacent property.

Because the Lombard descendants have long known that Higgins claimed an interest adverse to theirs and that the United States purchased the property from him when developing the Cape Cod National Seashore, they reasonably should have known for well over twelve years of the United States' adverse claim to the property surrounding the family burial plot.

At oral argument, plaintiffs contended that the key to their argument is the evidence that the government gave them a key to get onto the property. However, provision of that key to provide access reflects a recogni-

tion of plaintiffs' recorded right of way to gain access to the cemetery, not a concession of tenancy in common to the entire property. Because plaintiffs are seeking a right to possession of the property, not a right to an easement to the cemetery, the cases they rely on are inapposite. *See Werner v. United States,* 9 F.3d 1514, 1518 (11th Cir.1993) (holding that landowners' claim to an easement accrued when they were denied access to a road, rather than when they learned that the government held title); *Patterson,* 76 F.3d at 224 (holding that a cause of action accrued when plaintiffs' were denied access to the roadway); *Michel,* 65 F.3d at 131–32 (holding that a claim accrued when the United States denied landowners use of a roadway for access to their property, rather than when the landowners became aware of the government's possessory interest).

### ORDER

The United States' motion for summary judgment (Docket 15) is hereby **ALLOWED** with respect to the plaintiffs and the plaintiff-intervenors.[5] The motion of Plaintiffs Edward E. Lombard et al. for summary judgment as to Title (Docket 17) is **DENIED.**

---

**5.** The plaintiff-intervenors never opposed the government's motion for summary judgment as to them.