# United States Court of Appeals

## For the First Circuit

No. 03-1430

EDWARD E. LOMBARD; ASA P. LOMBARD, III;
EDITH LOMBARD CASSICK; RUTH LOMBARD GOURLEY;
FLORENCE LOMBARD BROWN; BARBARA LOMBARD BANUK;
SUSAN LOMBARD BLACK; ALTON HORTE; CARLETON G. SMITH;
BARBARA E. BAINES; VIRGINIA H. HART,

Plaintiffs, Appellants,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Oberdorfer,* Senior District Judge.

John D. Hallisey for appellants.
Anita Johnson, Assistant U.S. Attorney, with whom Michael J.
Sullivan, United States Attorney, was on brief for appellee.

January 23, 2004

---

*Of the District of Columbia, sitting by designation.

**BOUDIN**, <u>Chief Judge</u>.  In the early 1960s, the United States acquired for a modest sum an 8.6 acre plot of land in Wellfleet, Massachusetts, as part of the creation of the Cape Cod National Seashore.  Remote descendants of a man who owned the property until his death in 1873 now seek to overturn a 1964 state court judgment clearing title in favor of the United States' predecessor in interest.  The federal district court held the state judgment valid and the descendants now appeal.

The complex facts are set forth in three different places: the district court's original decision resolving the case in the government's favor on statute of limitations grounds, <u>Lombard</u> v. <u>United States</u>, 28 F. Supp. 2d 44 (D. Mass. 1998) ("<u>Lombard I</u>"); our own decision remanding the matter for further proceedings, <u>Lombard</u> v. <u>United States</u>, 194 F.3d 305 (1st Cir. 1999) ("<u>Lombard II</u>"); and the district court's second decision now under review, which again decided in the government's favor based on the 1964 state judgment, <u>Lombard</u> v. <u>United States</u>, No. Civ.A.97-10725-PBS, 2002 WL 1998245 (D. Mass. Aug. 28, 2002) ("<u>Lombard III</u>").

We therefore content ourselves here with a very short summary of facts needed for this new appeal.  When Thomas Lombard died in 1873, the property went to his five children.  Two of the heirs made a conveyance to George Higgins in 1924, possibly claiming that they owned the whole parcel; in any event Higgins thereafter claimed the whole and sought a Massachusetts Land Court

-2-

judgment to that effect in 1935; that case was ultimately dismissed without prejudice. The five children of Thomas Lombard are deceased, but a profusion of remote descendants exist in various locations around the country.

In 1962, the United States bought the property from Higgins for $13,500 but withheld payment until title was cleared. In 1963, Higgins began a quiet title action in the Barnstable County Superior Court, claiming not only title by deed but also by adverse possession. At this point none of the Lombard descendants lived on the land--it was undeveloped save for a family cemetery--and none were listed in Wellfleet tax records or local land office records as an owner or claimant to the property.

Although the complaint called for service upon Thomas Lombard and others, including his "heirs, devisees, or appointees," the sheriff made a return certifying that he had made a "diligent search" for Thomas Lombard and his "Agent or Attorney" but found no one (Thomas Lombard being, at this point, long dead). The sheriff is no longer alive and no one knows exactly whom he searched for or in what manner. What is clear is that the court did not rest its jurisdiction simply upon this faulty return.

Under Massachusetts law governing quiet title actions, "[i]f in such action the court finds that actual service cannot be . . . made upon a defendant," the court may direct notice be given by posting on the land, or newspaper publication, or both to

constitute "constructive service on all the defendants."  Mass.
Gen. Laws ch. 240, § 7 (2002).  Notice of the suit was given by
publication in a local Cape Cod newspaper in October and November
1963, and by posting notices in the Barnstable County Registry of
Deeds and on the property itself.  Personal service was made on
three individuals on abutting property.

In addition, Massachusetts law provides that if despite
such notice the court thinks that there may be defendants who have
not been reached, it may sua sponte or on motion "appoint a
guardian ad litem or next friend of any such defendant."  Mass.
Gen. Laws ch. 240, § 8.  Higgins died while the quiet title suit
was pending, and Higgins' wife Katherine was substituted for him in
the suit.  In response to Katherine Higgins' request, the court
appointed a guardian ad litem, James Quirk, to represent
unascertained and unknown potential claimants to the property.

Quirk reported that he had investigated the matter,
including the title searcher's report, the title records in the
county registry, and the county probate reports, and that he could
discover no one else entitled to notice.  The probate records were
pertinent because a claim to the land did not appear in the probate
inventories of any of the three Lombard children who did not join
in the 1924 conveyance--and the current plaintiffs' claims rest
entirely on the claims of these ancestors.  It is unclear whether
Quirk searched Wellfleet tax records to see if any of the

-4-

descendants paid taxes on the property, but it appears that he would have found nothing, since none of them did.

The Massachusetts statute provides that if notice is given by posting or publication and the possible appointment of a guardian _ad litem_, then "the court may proceed as though all defendants had been actually served with process." Mass. Gen. Laws ch. 240, § 10. It then further provides: "Such action shall be a proceeding in rem against the land, and a judgment establishing or declaring the validity, nature or extent of the plaintiff's title may be entered, and shall operate directly on the land and have the force of a release made by or on behalf of all defendants of all claims inconsistent with the title established or declared thereby." _Id._

Following Quirk's report, which appended significant evidence in support of Higgins' adverse possession claim, the court entered a final decree in August 1964, confirming title in Higgins' wife save for a reservation of the Lombards' ownership of the burial plot and an easement to access it. The court's ruling also stated that notice was given to all interested parties and that a guardian _ad litem_ had reported to the court. The government then paid Higgins' wife for the property and proceeded to incorporate it into the Cape Cod National Seashore.

Over thirty years later, in April 1997, a number of Thomas Lombard's descendants brought the present action to

partition the property, claiming as descendants of the three children of Thomas Lombard who had not joined in the 1924 sale. Given the number of descendants, each plaintiff's share of the alleged 60 percent interest in 8.6 acres is small. But, of course, the value of choice Cape Cod property has likely much increased in the intervening period.

These claims might well be defeated by the adverse possession defense, but the government sought to defend its title without resort to a trial. It first invoked a twelve-year statute of limitations on quiet title actions against the United States, 28 U.S.C. § 2409a(g) (2000), and initially prevailed, Lombard I, 28 F. Supp. 2d at 48-50. When we vacated this judgment, we said that summary judgment might still be appropriate based on the 1964 quiet title decree. Lombard II, 194 F.3d at 312. On remand, the district court so found, Lombard III, 2002 WL 1998245, at *8, and the descendants now appeal for a second time.

For the most part, this case is highly idiosyncratic and the district court's opinion is lucid and carefully considered. In such a case we might ordinarily affirm summarily on the well-reasoned decision of the district judge. But one facet of the matter is difficult and may have some precedential value. We confine our discussion to that issue, namely, whether the notice given under the Massachusetts statute was an adequate basis for the 1964 judgment.

The 1964 decree is a formal, final judgment issued by a state court clearing title in favor of the United States' predecessor in interest. It binds a federal court under the full faith and credit statute, 28 U.S.C. § 1738 (2000), unless the judgment itself is void. The burden of showing that it is void "'rests heavily'" upon those who challenge the judgment. Cook v. Cook, 342 U.S. 126, 128 (1951) (quoting Williams v. North Carolina, 325 U.S. 226, 234 (1945)). The plaintiffs claim that the state court did not give notice of the action to the Lombard descendants sufficient to meet minimum due process standards.

Individual service of the papers that initiate a case normally constitutes the required "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Where the name and address of the person who holds an interest in the property is known, "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983).

But less reliable means of notice suffice where reasonable in the circumstances, e.g., where claimants are hard to ascertain or their addresses are unknown. See Mennonite, 462 U.S. at 798 n.4. In Mullane, 339 U.S. at 317, the Supreme Court said: "[I]n the case of persons missing or unknown, employment of an

indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." The typical secondary means include notice by publication and posting. See, e.g., Mass. Gen. Laws ch. 240, § 7 (2002). Both methods were employed here, together with a personal search by the sheriff and, thereafter, a further records search by the guardian ad litem.

The plaintiffs assert that Higgins--the person who instigated the 1963-64 quiet title action--knew that there were some descendants of Thomas Lombard living in Wellfleet who might claim an interest in the property, and Higgins deliberately chose not to give them personal notice. The evidence as to this is murky and was discounted by the government; but the district court accepted the possibility. So we will assume arguendo that the factual issue might bar summary judgment--if it were decisive. We conclude that in this case it is not.

There is a strong public interest in fostering a regime by which titles can be traced and relied upon. Mullane, 339 U.S. at 313-14. In this case, the state court that decided the quiet title action went through an elaborate process designed to determine that claimants with possible adverse interests were sought out and given the best notice available in the circumstances. As already described, this included not only notice by posting and publication, but also (apart from the search by the

sheriff) the appointment of a guardian _ad litem_ who made his own record search for possible claimants and reported back to the court.  The court accepted the search as sufficient.

The state court thus did everything that it reasonably could to establish its jurisdiction, and the objective circumstances supported the state court's authority to enter a final judgment quieting title to the property.  If there had been other records giving the names and locations of other possible claimants, the sheriff or guardian _ad litem_ would likely have found them; but neither did.  In these circumstances, a state court judgment should not be held "void" based on speculations many years later as to Higgins' private knowledge at the time.

Leading cases like _Mullane_ contain general statements that notice by posting or publication only suffices where claimants are otherwise unknown and cannot be personally served.  _Mullane_, 339 U.S. at 318.  But typically these cases involved statutes that purported to allow jurisdiction by posting or publication without regard to whether the claimants could be found; and none of them involved a situation in which a state court, in addition to notice by posting and publication, appointed a guardian _ad litem_ and reasonably determined on the basis of objective evidence that individual claimants were unknown and could not be personally served.  Where a state has adopted and followed a scheme as protective as that used in this case, we think the resulting

-9-

judgment should not be invalidated by a different court even if a party to the original action wrongfully withheld private knowledge from the court.

Were Higgins alive today and claiming ownership for himself, he might well be estopped from relying upon the quiet title judgment if he wrongly procured it. Cf. InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003). Similarly, the court that entered the judgment might, if a timely request had been made, have considered a motion to reopen its own judgment based on fraud, new evidence or the like. Cf. Fed. R. Civ. P. 60(b). Neither possibility applies here.

A word should be said about United States v. 125.2 Acres of Land, 732 F.2d 239 (1st Cir. 1984). There, the government took a small parcel of Cape Cod land by eminent domain, knowing that one Matthew Jaeckle had a claim to a part of it and lived in Nantucket. Although he was listed in the telephone book, the government did not send him notice but published notice in a local paper and posted a sign somewhere on the 125 acre tract (apparently not on Jaeckle's portion). The district court condemned the land in 1947 and later in 1952 valued the land, closing the case but reserving "leave to reinstate for cause shown upon application of any interested party." Id. at 241.

Thereafter Jaeckle learned of the condemnation and in 1972 sought to reopen, alleging that he had been given insufficient

-10-

notice and that the true value at time of condemnation was much higher than the amount he was allotted. This court declined to upset the condemnation but remanded to permit Jaeckle to contest the value as of 1947, pointing out that the government had known of Jaeckle's interest and general location, and could easily have found him listed in the telephone book.

125.2 Acres involved our reopening a federal district court proceeding that had only been half closed (given the reservation); the reopening was based on objective evidence that the government could have easily given personal notice to a known record owner. Nothing in the opinion indicates that the panel would have declared void the final judgment of a sister jurisdiction when it was reasonably entered after the appointment of a guardian ad litem and a formal determination that all feasible notice had been given. We see no conflict with 125.2 Acres.

The descendants make a further and wholly different attack upon the 1964 judgment. In a nutshell, they say that the earlier action in the Massachusetts Land Court was not technically dismissed until the 1970s, and this deprived the Superior Court of authority to entertain the quiet title action. The argument is highly technical, rests on peculiar facts, and is not of general interest. On this issue we are content to rely entirely on the discussion by the district court.

Affirmed.