[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11908

_____

D.C. Docket No. 9:16-cv-80802-RLR


NE 32ND STREET, LLC,
c/o Mr. William Swain as agent for the Frank Sawyer
Revocable Trust
5455 Via Delray
Delray Beach, FL 33484
as agent for the Frank Sawyer Revocable Trust,

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 23, 2018)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and HALL,[*] District Judge.

WILLIAM PRYOR, Circuit Judge:

This appeal requires us to decide whether a conservation restriction imposed in 2013 on a property owned by the Frank Sawyer Revocable Trust restarted the 12-year statute of limitations of the Quiet Title Act, 28 U.S.C. § 2409a, so that NE 32nd Street, LLC, as agent for the trust, can sue to extinguish a spoilage easement granted to the federal government in 1938. The trust owns a piece of land on the Intracoastal Waterway in Florida. In 1938, its predecessor in interest granted a spoilage easement that allows the government to deposit dredged material on the property. And in 2013, the government granted the trust a building permit that imposes strict conservation requirements on the land. Three years later, NE 32nd filed an action against the government to extinguish the 1938 spoilage easement. It argued that the 2013 permit restarted the statute of limitations, but the district court disagreed and dismissed the complaint. Because the statute of limitations bars a challenge to the eighty-year-old easement and the 2013 permit did not change the terms of that easement to the detriment of the trust, we affirm.

---

[*] Honorable James Randal Hall, United States District Judge for the Southern District of Georgia, sitting by designation.

## I.    BACKGROUND

The Frank Sawyer Revocable Trust owns a piece of property on the Intracoastal Waterway in Florida. In 1938, its predecessor in interest granted the United States "the perpetual right and easement to deposit upon the [property] material that may at any time be dredged in the construction and maintenance of the . . . Waterway." Three quarters of a century later, the government issued the trust a permit to fill and build on part of the property. The 2013 permit also imposed strict conservation restrictions on much of the property. For example, the permit requires the trust to "maintain the [relevant] areas . . . in their natural state in perpetuity," forbids the "[d]umping or placing [of] soil or other substance or material as landfill or [the] dumping or placing of trash, waste[,] or unsightly or offensive material," prohibits many kinds of "[s]urface use," and demands that "only clean fill material" be used on the property.

Three years later, NE 32nd Street, LLC, as agent for the trust, sued the government under the Quiet Title Act, 28 U.S.C. § 2409a, and "request[ed] entry of a judgment . . . cancelling the [1938 easement] and releasing [the property] from all burdens and obligations created thereunder." NE 32nd underscored that when the government issued the 2013 permit with its strict conservation requirements, the government "committed an act wholly inconsistent with its future use and enjoyment of the [1938 spoilage easement]." NE 32nd argued that this tension

3

between the 1938 easement and 2013 permit required the district court to extinguish the easement.

The government moved to dismiss for lack of jurisdiction based on a provision of the Act that states that an action against the government "shall be barred unless it is commenced within twelve years of the date upon which it accrued." *Id.* § 2409a(g). It argued that this limitations period is jurisdictional. The government maintained that the challenged easement was granted in 1938 and that the "predecessor in interest [of the trust] knew or should have known of the claim of the United States [to the easement] since [this date]."

The district court initially denied the motion, but it later granted a motion for reconsideration and dismissed the complaint. It explained that the "adverse interests were present in this case in 1938" and that the issuance of the 2013 permit "did not abolish [the] preexisting notice [that the trust had] of the United States'[s] asserted interest."

## II.    STANDARD OF REVIEW

We review *de novo* both "a district court's application of a statute of limitations," *F.E.B. Corp. v. United States*, 818 F.3d 681, 685 (11th Cir. 2016) (citation and internal quotation marks omitted), and its "grant of [a] motion[] to dismiss for lack of subject matter jurisdiction," *Broward Gardens Tenants Ass'n v. U.S. Envtl. Prot. Agency*, 311 F.3d 1066, 1072 (11th Cir. 2002).

4

### III.   DISCUSSION

The Act provides that an action to quiet title brought by a private party against the United States "shall be barred unless it is commenced within twelve years of the date upon which it accrued." 28 U.S.C. § 2409a(g). This limited "waiver of sovereign immunity . . . is jurisdictional," *F.E.B.*, 818 F.3d at 685, and we "must be careful not to interpret it in a manner that would extend the waiver beyond that which Congress intended," *id.* at 686 (quoting *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983)) (internal quotation marks omitted). Indeed, the Supreme Court has underscored that the Act represents a "careful and thorough remedial scheme" that litigants cannot "circumvent[] by artful pleading." *Block*, 461 U.S. at 285 (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976)).

The running of the statute of limitations starts "on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(g). We define this "claim" in terms of a property interest of the United States that is actually "adverse[]" to the interest asserted by the plaintiff. *Werner v. United States*, 9 F.3d 1514, 1519 (11th Cir. 1993). It is not enough that the government asserts "some interest—any interest—in the property." *Id.* Indeed, if the interests asserted by the parties are capable of peaceful coexistence—such as if the plaintiff asserts that he owns a fee simple subject to an

5

easement while the government claims the complementary easement—then the clock will not run. In contrast, adversity arises if the government asserts a *new* interest that is fundamentally incompatible with the interest asserted by the plaintiff or "seeks to expand [a preexisting] claim." *Id.*

For example, in *Werner* we explained that the Act did not bar former users of a road over government property from "seeking a declaration that they had acquired an easement of necessity" after the government installed a gate blocking the road within 12 years of the suit. *Id.* at 1515; *see also id.* at 1516. Although the government had held "some interest" in the underlying property for a much longer period of time because it had owned the land since 1821, *id.* at 1519; *see also id.* at 1515, we explained that the "government's claim" for the purpose of the litigation was its decision to "*expand* [its preexisting] claim" when it built the gate and excluded the plaintiffs, *id.* at 1519 (emphasis added); *see also Kane Cty. v. United States*, 772 F.3d 1205, 1216 (10th Cir. 2014) ("As a public right-of-way can generally peaceably coexist with an underlying ownership interest, the United States must provide a county or state with sufficient notice of the United States'[s] claim of a right to exclude the public." (citations and internal quotation marks omitted)); *Michel v. United States*, 65 F.3d 130, 132 (9th Cir. 1995) (explaining that the plaintiffs' "claim of access to roads and trails across [government property] did not accrue until [they] knew or should have known the government

6

claimed the exclusive right to deny their historic access to the trails and roads"). In short, a claim arises when the government puts its interest in conflict with that of the plaintiff.

NE 32nd contends that the statute of limitations does not foreclose its suit to extinguish the 1938 spoilage easement. Although NE 32nd does not dispute that the trust and its predecessor in interest have "known of" the easement since 1938, 28 U.S.C. § 2409a(g), it argues that the "spoil[age] easement did not become adverse . . . until the conflicting . . . [p]ermit was issued in 2013 and the conservation easement was recorded by the [government] in direct conflict therewith." It asserts that the fee simple interest held by the trust peacefully coexisted with the spoilage easement until 2013, and it concludes that the issuance of the conservation permit restarted the statute of limitations.

We disagree. The property right of the government that NE 32nd wants to challenge—the 1938 spoilage easement—is the same property right that the predecessor in interest of the trust granted the government. And 1938 was a lot more than 12 years ago. The 2013 permit did nothing to "expand" the 1938 easement in a manner adverse to the trust. *Werner*, 9 F.3d at 1519.

NE 32nd responds that adversity arose only in 2013 when the government issued a conservation permit that is in tension with the 1938 easement, but this argument overlooks that any limitations that the permit imposes on the future use

7

of the spoilage easement by the government have no negative impact on the interest held by the trust. To be sure, the government conceded for the purpose of the motion to dismiss that the extensive 2013 conservation restrictions are inconsistent with the 1938 easement. But any tension between two interests that both benefit the government hardly creates new adversity between the interests of the government and the trust. *See F.E.B.*, 818 F.3d at 692 ("[T]he statute of limitations is . . . triggered by . . . only a claimed interest that is inconsistent with . . . *the plaintiff's* asserted interest." (emphasis added)); *Werner*, 9 F.3d at 1519 (explaining that the "inquiry" was whether the government "expand[ed] [its] claim" to the detriment of the plaintiff). If anything, the events of 2013 *benefitted* the trust by suggesting that the government is now more reluctant to dump spoilage on the property. And NE 32nd acknowledges as much when it asserts that "the government itself, by [the 2013 permit], . . . restricted *its own access* and created the conflict with its own spoil[age] easement." In short, the fee simple held by the trust is no more encumbered by the spoilage easement than it was in 1938.

NE 32nd invokes the legal principle that "easement interests and fee simple ownership interests can peacefully coexist with one another without adversity," and it contends that its fee simple interest was somehow not inherently adverse to the spoilage easement in 1938 but instead became adverse to the easement in 2013. But whether certain kinds of easements can coexist with certain kinds of fee

8

simples is irrelevant to this appeal. More specifically, although a fee simple and an easement can coexist when the landowner defines his interest as a fee simple *encumbered* by an easement, *see Kane Cty.*, 772 F.3d at 1216; *Michel*, 65 F.3d at 132, NE 32nd has asserted a fee simple *unencumbered* by the 1938 easement. This kind of unencumbered fee simple necessarily has been adverse to the spoilage easement since the moment that the easement was created in 1938, and the 2013 permit did nothing to exacerbate this conflict.

To be sure, the recent decision by NE 32nd to redefine the property interest as an unencumbered fee simple has created a dispute about the 2013 easement, but this conflict provoked by NE 32nd cannot restart the clock because only an "expan[sion]" *by the government* can create the necessary adversity. *Werner*, 9 F.3d at 1519. The plain text of the Act dictates this conclusion when it provides that the statute of limitations begins to run when the landowner has notice of "the claim *of the United States*." 28 U.S.C. § 2409a(g) (emphasis added). When the private party decides to challenge the claim of the United States has nothing to do with when adversity arises. A plaintiff cannot restart the clock whenever he decides to reinvent his interest. Indeed, the ability to manufacture adversity through "artful pleading" would nullify the statute of limitations. *Block*, 461 U.S. at 285 (quoting *Brown*, 425 U.S. at 833).

Finally, NE 32nd suggests that the district court lacked sufficient reason to revisit its initial ruling and grant the motion for reconsideration, but this argument is meritless. The statute of limitations is jurisdictional, *see F.E.B.*, 818 F.3d at 685, and a jurisdictional question demands review at any point in litigation, *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Indeed, we have underscored that "because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction," it should "raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). The district court wisely reconsidered its ruling.

## IV.    CONCLUSION

We **AFFIRM** the dismissal of the complaint.